**UNITED STATES, Appellee,**

v.

**David L. JONES, Appellant.**

**No. 71–1263.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1972.

Decided Aug. 14, 1972.

Rehearing Denied Sept. 11, 1972.

Robert D. Smith, III, Purcell & Smith, Little Rock, Ark., for appellant.

James R. Rhodes, Asst. U. S. Atty., Little Rock, Ark., W. H. Dillahunty, U. S. Atty., Fletcher Jackson, Asst. U. S. Atty., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, BRIGHT, Circuit Judge, and WEBSTER,* District Judge.

WEBSTER, District Judge.

David L. Jones, former director of Finance and Purchasing for the Arkansas Department of Revenue, was charged and found guilty of willfully and knowingly using and causing to be used false writings and documents containing false and fictitious and fraudulent statements in a matter within the jurisdiction of a department or agency of the United States in violation of Title 18, United States Code § 1001. In his appeal, Jones challenges the sufficiency and clarity of the indictment, the sufficiency of the evidence to prove the violation and the general adequacy of the court's instructions in tendering the case to the jury. We affirm the conviction.

The Highway Safety Act of 1966, 23 U.S.C. §§ 401, 402, made provision for federal funds to assist states in the planning, development and administration of programs designed to realize the objectives of the Act. Pursuant thereto, the Arkansas Department of Revenue made application to the United States Department of Transportation for funds to convert handwritten vehicle registration data to computerized cards. The project, which was thereafter identified as Public Safety Project No. VR–68–1–001, was approved by the Federal Government April 30, 1968. Jones was not a signator to the application.

In June of 1968, before the work had been performed on the project, invoices totalling $49,986.07 were submitted to the Department of Revenue by the contractor, Martin C. Martin, d/b/a Information Systems, Inc. These invoices were transmitted to Y. W. Welchel, coordinator of public safety for the State of Arkansas, who in turn submitted them to the Department of Transportation for reimbursement.[1] In due course the federal agency honored the request for funds by a draft in the amount of $49,986.07, payable to the Arkansas

---

1. This procedure was contrary to existing regulations which contemplated use of federal funds as reimbursement for work actually completed. Jones was not charged with this misrepresentation, and it is outside the reach of the indictment.

State Revenue Department. The draft was deposited with the Commercial National Bank of Little Rock, Arkansas to the credit of the trust account, National Highway Safety Act, Public Safety Program, State of Arkansas. Mr. Welchel thereupon drew a check on this account dated July 26, 1968, in a like amount, payable to Arkansas State Revenue Department "for VR–68–1–001 motor vehicle registration contractual expense in full". This check was thereafter endorsed "Arkansas State Revenue Department David L. Jones" and deposited by Jones in First American National Bank in North Little Rock. The Department of Revenue subsequently paid Information Systems, Inc. $40,713.40 for work which it performed until its work was prematurely terminated and the job completed by the Revenue Department.

During this same period of time, Addressograph-Multigraph Corporation had supplied materials unrelated to the computer project to the Department of Revenue, for which the state owed approximately $15,000.00 to $16,000.00. On September 6, 1968, Addressograph's representative, Dale Floyd Cook, called on Jones in his office at Little Rock. According to Cook, Jones told Cook that he had found a way to get the money for Addressograph, there having previously been no money available. Jones requested Cook to prepare two invoices, one in the amount of $5,130.51 and one in the amount of $3,511.49, which he did. Cook testified that Jones gave him the exact details to put in the invoices. He prepared an invoice dated August 7, 1968 for "Copier Duplicator Supplies for the period July 1, 1967 through February 28, 1968" in the amount of $5,130.-51. He prepared another invoice dated September 6, 1968 for "Copier Duplicator Supplies for the period March 1, 1968 through August 31, 1968" in the amount of $3,511.49. The invoices were false, bore no relationship to Addressograph's actual account with the Depart-

ment of Revenue, and subsequently Addressograph paid the Department of Revenue $8,642.00.

Cook took the false invoices to Jones' office, both of which were marked "paid in full". On September 6, 1968, Jones drew a check on the First American National Bank account in the amount of $8,642.00 payable to "cash".[2] The check was signed "Arkansas State Revenue Dept. Project No. VR–68–1–001 by: David L. Jones" and was endorsed "David L. Jones". The amount of the check corresponds to the total of the two invoices prepared by Cook. Cook testified that he received $5,130.00, the amount of one of the invoices. Jones testified that he paid the full $8,642.00 to Cook, in cash.

The false invoices, as well as the check indicating the full amount had been paid to Addressograph, were placed and retained in the files of the State Department of Revenue.

I

Prior to trial, Jones filed a motion to dismiss the indictment, contending that the indictment did not state facts sufficient to constitute an offense against the United States and that the indictment contained superfluous language which could only prejudice the jury. The motion was denied, and the point was preserved on appeal.

The indictment alleges facts which show the offense occurred in respect to funds as to which the Department of Transportation had jurisdiction; that the defendant caused to be prepared two false invoices in stated amounts which are sufficiently described; that the invoices contained a false representation that these amounts had been paid to Addressograph Multigraph and services performed, whereas $3,511.49 was not paid, nor were the services performed for the federal project.

2. The words "Addressograph Multigraph Corp." were inserted after the word "cash" in ink, after the check had cleared the bank. Jones testified the addition was in his handwriting.

Rule 7(c), Federal Rules of Criminal Procedure, provides that the indictment shall be a plain and concise statement of the essential facts constituting the offense charged. The purpose of an indictment is to put the defendant on notice of the charge against him and guarantee that he is not charged without probable cause. The indictment charges the willful and knowing use of false writings containing false statements in a matter within the jurisdiction of a federal agency. The indictment thus alleges an offense under Title 18, United States Code § 1001 as to this defendant sufficient to inform him of the charges and to enable him to prepare his defense or plead the indictment in bar to a subsequent proceeding for the same offense. Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Risken v. United States, 197 F.2d 959 (8th Cir. 1952).

Appellant's contention that irrelevant and superfluous language was prejudicial is unsupported by brief, argument or the record. The trial court correctly denied the motion to dismiss the indictment.

## II

Appellant attacks the sufficiency of the evidence upon two grounds; first, that the evidence failed to establish that he made or caused to be made the false invoices or false representations; and, second, that even if made, such representations were not material.

Appellant relies for his first contention upon the testimony of various witnesses involved in the federal project that appellant had made no representations to them about the Addressograph-Multigraph invoices. The assertion is made in appellant's brief and was made on oral argument that there was "no record evidence and no evidence from which an inference could be drawn that the defendant represented that the payment of these two invoices to Addresso-graph-Multigraph was in pursuance of the project for which the funds were appropriated." Subsequent to argument, appellant's counsel withdrew this assertion and acknowledged that the check drawn to "cash" by Jones in the combined amount of the two Addressograph-Multigraph invoices was identified on the face of the check as "Arkansas State Revenue Department Project No. VR–68–1–001." Thus, the disbursement used to offset the false invoices was plainly tied to the federally funded project. The check, drawn to cash, and in fact cashed by Jones, is further corroboration of Cook's testimony, from which the jury might reasonably find knowledge by Jones of the falsity of the invoices used and retained by him in the files of the Department of Revenue.

Further, defendant acknowledged that the words "Addressograph Multigraph Corp." appearing in ink on the check to "cash" which he had drawn were in his handwriting. This insertion was not contained on the check at the time it was cashed, a fact from which a jury could find additional evidence of defendant's knowing participation in the use of a false statement. Appellant Jones took the stand and disputed Cook's testimony that Jones had instructed him how to complete the invoices. Jones admitted that the two invoices, differently dated, were presented to him on September 6, 1968, the same day on which he drew the check to cash. The credibility of the witnesses was for the jury, which under all the facts and circumstances in evidence evidently chose to believe the testimony of Cook and not of Jones.

Appellant contends that even if the representations were made, they were not material because the federal government did not rely upon them nor was it influenced by or induced to take any action because of them. Materiality is an essential element of the crime charged and such is the law of the circuit. Brethauer v. United States, 333 F.2d 302, 306 (8th Cir. 1964); Fried-

man v. United States, 374 F.2d 363 (8th Cir. 1967) (dissenting opinion at 370). Whether or not the government was deceived, or suffered monetary loss because of the acts charged in the indictment, however, is immaterial. Gonzales v. United States, 286 F.2d 118 (10th Cir. 1960), cert. denied 365 U.S. 878, 81 S.Ct. 1028, 6 L.Ed.2d 190 (1961).

In considering the question of materiality, it is appropriate to consider applicable regulations authorized by federal statute. Public Law 89–670 empowers the Federal Highway Administrator to promulgate rules and regulations necessary to carry out his delegated duties, including the duties of the Secretary of Transportation pertaining to Motor Carrier Safety. FHA order 7–1 dated June 2, 1969 provides that the state will maintain and keep available original basic documentation and records as evidence of costs incurred for not less than three years after final payment "for examination by representatives of the U. S. Government." This is in conformity with 23 C.F.R. § 1.30(c). Thus the federal agency involved in disbursing authorized grants has manifested a continuing interest in being able to audit the state's records to assure monies were advanced and used in the manner contemplated and as authorized. The false invoices could have no other purpose than to frustrate this lawful objective and to conceal the misuse of specially designated federal funds. The use of fraudulent statements or writings to conceal an unlawful act is no less material than the use of false statements or writings to carry out the act itself. 18 U.S.C. § 1001 requires no reliance upon the false statements or writings to establish materiality. Gonzales v. United States, supra.

Another test of materiality employed by this court is set forth in Blake v. United States, 323 F.2d 245 (8th Cir. 1963) at 246:

"In determining whether a false statement is material, the test is whether it 'has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made.' Gonzales v. United States, 10 Cir., 286 F.2d 118, 122; Weinstock v. United States, D.C.Cir., 97 U.S.App. D.C. 365, 231 F.2d 699, 701–702."

In a case involving false statements by a concessionaire as to his net profits at a military exchange, the concessionaire argued that such statements were not material because his contractual obligation was based upon gross receipts and that, therefore, the amount of his net profit was of no concern to the post exchange under the test in Blake v. United States, supra. In an opinion by Judge Matthes, this contention was rejected, noting that accurate reports would have provided a basis for determining whether the contract should have been renegotiated. Brethauer v. United States, supra, at 333 F.2d 302 (8th Cir. 1964).

Upon facts not dissimilar from the instant case, this court has held false statements in invoices to be material to a § 1001 violation where a government defense contract was subject to renegotiation. Ebeling v. United States, 248 F. 2d 429 (8th Cir. 1957), cert. denied 355 U.S. 907. In that case, this court held that "§ 1001 does not require that a false statement or document must itself have been presented to a department or agency of the United States but that it contemplates as well any knowing making or using of such a statement or document in intended relationship to a matter that is within the jurisdiction of the department or agency." Judge Johnsen, writing for the court, said (page 434):

"In more explicit terms, we are of the opinion that it constitutes a violation of § 1001, for anyone willfully to make or use a false writing or document, knowing that it contains a false, fictitious or fraudulent statement or entry, and intending that it shall bear a relation or purpose as to some matter which is within the jurisdiction of

a department or agency of the United States, and with the false, fictitious or fraudulent statement or entry which it contains having a materiality on the department or agency matter. *If the false writing or document constitutes a legally required record under a statute in some regulatory field, there may perhaps be an even broader liability under the section,* but that aspect is not here involved and calls for no consideration." (Emphasis added)

■ The potential for an adverse effect upon the exercise of a government function, see *Tzantarmas v. United States,* 402 F.2d 163, 168 (9th Cir. 1968), has been fully demonstrated. The element of materiality was proved at trial.

### III

■ In a separate contention which is in fact related to the sufficiency of the evidence, appellant argues that the government failed to show that the false statements were used "in a matter within the jurisdiction of a department or agency of the United States," which is an essential element of the offense. In a novel theory, appellant contends that when the Department of Transportation issued its draft for $49,986.07 to the Department of Revenue in supposed reimbursement for work already completed, the United States lost any interest in the money and hence in the "matter". (By implication, the fraud, if any, was upon the State of Arkansas and not the United States.) § 1001 may not be so

narrowly circumscribed. "Jurisdiction means the right to say and the power to act." *Gonzales v. United States,* 286 F.2d 118 (10th Cir. 1960), approved in *Friedman v. United States,* 374 F.2d 363 (8th Cir. 1967). The federal funds were specially designated and were in fact first deposited in a trust account. The project continued to be subject to audit and monies not used on the project were reimbursable. While the monies paid by the United States on account of the project were no doubt affected with a trust, it is not necessary for us to so hold. The power of the United States to protect its interest in seeing to the proper and lawful application of the funds fully supplies the needed "jurisdiction" of the Department within the intended meaning of § 1001.

### IV

Appellant, whose trial counsel offered no objections or exceptions to the charge, now contends that the instructions were so erroneous as to constitute plain error, citing *Chubet v. United States,* 414 F.2d 1018, 1021 (8th Cir. 1969). Unless the asserted errors were of such gravity as to affect substantial rights, the failure of the court to note them was waived by failure to object at the proper time. Fed.R.Crim.P. 30.

■ Appellant now objects in particular to a portion of the charge in which the trial judge outlined the respective positions of the government and the defendant.[3] Appellant now contends

3. "Now, I am not going into the evidence, members of the jury. You heard the testimony. The charge here is that the defendant violated this statute. We are not here trying whether or not he got the money. What you have to determine is, did he, in his conduct as Director of Finance and Purchasing for the Department of Revenue of the State of Arkansas, pay out moneys to persons not entitled to them under the trust money that came from the United States to the State of Arkansas for its use for a certain pur-

pose. I think you will find from the check that was sent to the Department of Revenue the heading that the Department of Revenue was apprised that this was trust money. The money was received by this defendant. The defendant was supposed to send it, and he had sole control of it. The Government says that he deliberately and wilfully caused to be paid out of that some $8,600.00 not connected with this project, by the use of false supporting documents. The Government has not charged, and you will not

that the court should have put a number of additional questions to the jury for determination, such as the nature of the funds and the materiality of the representations. These are legal issues and no prejudice resulted because the trial judge did not submit them to the jury. United States v. East, 416 F.2d 351, 355 (9th Cir. 1969).

■ Appellant correctly argues that the falsity of the invoices should have been submitted to the jury. The trial judge instructed the jury that if Jones "knowingly, wilfully, paid out $8,600.00, whether to himself or somebody else, that he's not entitled to, *and that the information was false and he knew it to be false,* then I say to you—I don't tell you what a jury should ever do—you would be entitled on that testimony, *if you believe the elements which I have given to you,* to find a verdict of guilty as charged." (Emphasis added). Instructions are to be considered as a whole. Prior to giving the instruction quoted, the trial judge had outlined the essential elements of the offense by reference to the statute, including the provision making it unlawful to make or use "any false writing or document, knowing the same to contain any false, fictitious or fraudulent statement or entry * * *" We conclude that the charge taken as a whole contains no defect of sufficient magnitude to be plain error under Fed.R.Crim.P. 52.

The judgment is affirmed.

---

consider, whether he actually took the money, but if he knowingly, wilfully, paid out $8,600.00, whether to himself or somebody else, that he's not entitled to, and that the information was false and he knew it to be false, then I say to you —I don't tell you what a jury ever should do—you would be entitled on that testimony, if you believe the elements which I have given to you, to find a verdict of guilty as charged. On the other hand, he told you that he thought it was State money, and he thought he could use it as he saw fit, either himself or in conjunction with other people, and that he drew a check to 'cash'. Well, that's an element you also should consider, but, if you believe that this was an innocent action on his part without any intent, he ought to be acquitted, and if the Government has failed to establish the elements of the crime beyond a reasonable doubt, the defendant is entitled to the doubt, and should be acquitted."