**UNITED STATES of America, Appellee,**

v.

**Merlin VOORHEES, Appellant.**

**No. 78–1642.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1979.

Decided March 2, 1979.

Certiorari Denied April 30, 1979.

See 99 S.Ct. 2061.

---

Gary E. Davis of Johnson, Johnson & Eklund, Gregory, S. D., for appellant.

Robert Hiaring, U. S. Atty., Sioux Falls, S. D., argued, Gary G. Colbath, Asst. U. S. Atty., on brief, for appellee.

Before LAY, BRIGHT and STEPHEN-SON, Circuit Judges.

STEPHENSON, Circuit Judge.

On this direct criminal appeal appellant Merlin Voorhees challenges his conviction by a jury[1] on one count of violating 18 U.S.C. § 1001[2] by making and using a materially false document in a matter within the jurisdiction of an agency of the United States. Specifically, Voorhees was convicted of filing a false lease with the local Agricultural Stabilization and Conservation Service (ASCS) office in connection with claims under the Hay Transportation Assistance Program. Voorhees contends that the district court erred in refusing to grant his motion for judgment of acquittal because the false lease was not "material." We affirm the district court.

---

1. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, presided. Voorhees was placed on probation for a period of two and one-half years and was fined $2,500.

2. 18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Taking the evidence most favorable to the government, the following facts were established at trial. During all times relevant to this case Voorhees was the manager and one of the major stockholders of Missouri Slope Feedlots (Missouri Slope). Missouri Slope was a large cattle feeding operation located near Onida, South Dakota. A portion of South Dakota which included the Onida area suffered a severe drought in 1976. As a result there was an acute shortage of hay crops, which are used to feed cattle. Cattle producers were forced to rely upon crops from more distant parts of South Dakota and from other states.

In response to the serious plight of cattle producers in this area, on June 23, 1976, the President of the United States declared 56 counties in South Dakota a disaster area. This entitled those counties to benefits from the Federal Disaster Assistance Administration, which is under the control of the Department of Housing and Urban Development. See Disaster Relief Act of 1974, 42 U.S.C. § 5121, et seq. The United States Department of Agriculture was assigned to serve as the agent for the United States government to furnish financial assistance to farmers in the drought-stricken area by paying a portion of the transportation costs of farmers who brought in hay and other roughage from other areas. This program was called the Hay Transportation Assistance Program and was enacted by Congress as the Farmer-to-Consumer Direct Market Act of 1976, Pub.L.No.94–463, § 8, 90 Stat. 1982 (1976). It was administered through the state and local ASCS offices.

Until September of 1976 commercial feeding operations such as Missouri Slope were not eligible for assistance under the program. Throughout the duration of the program, there were several changes in the rates payable to participating cattle producers. The rates relevant to this prosecution were established by Department of Agriculture Regulations on October 8, 1976. The regulations were interpreted by the state ASCS office as authorizing payments of 80% of the transportation costs if the feed was commercially hauled or nine and one-half cents per ton of feed for every mile it was hauled, not to exceed $50 per ton of feed if the farmer used a truck he owned or leased.[3] It became apparent during the course of the program that the compensation paid for hauls made by self-owned or leased conveyances was usually greater than the payment made for commercial hauls. On December 7, 1976, the Department of Agriculture clarified the regulations by stating that for a leased vehicle to be eligible for payment as one's "own conveyance" there must be some risk to the lessee in the lease of the truck. Each county board had the task of determining in accordance with state ASCS guidelines whether a particular lease contained sufficient risk to the lessee to qualify as one's own conveyance.

To receive compensation under the program an application for eligibility had to be completed. After being approved for eligibility and making the actual haul, the individual had to file an invoice showing what commodity was hauled or, alternatively, fill out a form called a "Statement of Hay and Transportation Costs." In addition, if the participant wanted to qualify for payment at the own conveyance rate, he had to submit documentation of ownership or a copy of the lease on the vehicle used in transportation.

Voorhees, on behalf of Missouri Slope, made an application for eligibility on September 27, 1976, and it was approved the following day. Voorhees then entered into two separate leases for the hauling of feed. One lease was with Nelson Trucking and the other was with Jetwal, Inc. These leas-

---

**3.** Prior to October 8, 1976, commercial hauls were paid two-thirds of the transportation cost not to exceed $27 per ton, and a farmer who hauled in his own vehicle was paid at eight cents per mile for each ton, not to exceed $27 per ton. After December 1, 1976, eligible participants were paid 80% of the transportation costs for commercial hauls, and for their own conveyances they were paid nine and one-half cents per mile for each ton for the first 100 miles, then six and one-half cents per mile for each ton for each mile over 100, not to exceed $50 per ton.

es, which the government alleged were never intended to be complied with, formed the basis of counts 1 and 2 of the indictment. Voorhees was acquitted on both counts. These leases placed all of the risk upon the lessor. Voorhees subsequently made claims for payment on hauls made pursuant to these leases. Some of these claims were paid, and others have been withheld.

Voorhees admitted in a signed statement given to Department of Agriculture investigators that:

About the middle of December 1976, I heard rumors that any lease without risk to MSF [Missouri Slope] would not be considered a valid lease for use in claims under the HTAP [Hay Transportation Assistance Program]. At about that same time I or someone else from MSF went to the Sully County ASCS office, Onida, and obtained the copy of MSF's lease agreement with Nelson. That lease agreement had been submitted in support of MSF's claims under the HTAP. I then altered the lease agreement to make it appear that MSF, the lessee, was taking all the risks involved in the operation of Nelson's trucks during the period of the agreement. Nelson was not aware that I made these changes in the agreement.

I then returned the altered lease agreement to the Sully County ASCS office. No other MSF employee was involved in altering the lease agreement.

Voorhees further testified that he placed Don Nelson's signature on the lease without Nelson's knowledge and that he left the date of November 2 on the lease. This altered lease formed the basis of count 3 of the indictment, upon which Voorhees was convicted.

The auditor from the Department of Agriculture testified that when he examined the files of the ASCS office in Onida on December 17, 1976, he found the altered lease. Apparently, no hauls were made by Nelson for Missouri Slope subsequent to the time Voorhees altered the lease, since Nelson's last haul for Missouri Slope was before December 1, 1976. However, at the time the altered lease was filed, it appears that some of the claims made by Missouri Slope for hauls performed by Nelson had been paid, while others were still pending. It was not uncommon for a haul to be made on one date, a claim submitted for the haul on a later date, and payment made on still another date.

In this circuit materiality is an essential element of a charge under 18 U.S.C. § 1001. *United States v. Gilbertson,* 588 F.2d 584 at 589 (8th Cir. 1978); *United States v. Jones,* 464 F.2d 1118, 1121 (8th Cir. 1972), *cert. denied,* 409 U.S. 1111, 93 S.Ct. 920, 34 L.Ed.2d 692 (1973). "In determining whether a false statement is material, the test is whether it 'has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made.'" *Blake v. United States,* 323 F.2d 245, 246 (8th Cir. 1963), *quoting from Gonzales v. United States,* 286 F.2d 118, 122 (10th Cir. 1960), *cert. denied,* 365 U.S. 878, 81 S.Ct. 1028, 6 L.Ed.2d 190 (1961). The jury was properly instructed on this issue.

Voorhees generally argues that his motion for judgment of acquittal should have been granted because the government failed to establish the materiality of any false statement. More specifically, he alleges that the altered lease was not material for two separate reasons. First, he argues that any payments in excess of 80% of the actual cost of hauling, whether commercial or own conveyance, were not authorized by the statute creating the program, Farmer-to-Consumer Direct Market Act of 1976, Pub.L.No.94–463, § 8, 90 Stat. 1982 (1976). Thus, such excess payments by the ASCS office were illegal and, consequently, could not subject him to criminal liability. Second, it is argued that the lease could not be material since no claims for payment for hauls made by Nelson were filed after the altered lease had been placed in the ASCS files. We reject both contentions.

Assuming the validity of Voorhees' contention that any payments in excess of 80% of actual hauling costs were contrary to the terms of the enacting statute, his first argument is nevertheless ade-

quately answered in *United States v. Johnson*, 284 F.Supp. 273, 280 (W.D.Mo.1968), *aff'd*, 410 F.2d 38 (8th Cir.), *cert. denied*, 396 U.S. 822, 90 S.Ct. 63, 24 L.Ed.2d 72 (1969). Faced with a similar argument, Judge Hunter accurately observed:

> [D]efendant is in no position to assert the operations of the Conservation Reserve Program are illegal or unconstitutional in view of the fact he voluntarily put himself in a position to obtain the benefits from said program (and has obtained them), and when he has under that program attempted to mislead and cheat the government * * *.

Voorhees relies on the Tenth Circuit cases of *United States v. Radetsky*, 535 F.2d 556 (10th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976), and *Bartlett & Co., Grain v. United States*, 353 F.2d 338 (10th Cir. 1965). These cases are distinguishable from the present case because in *Radetsky* and *Bartlett* there was no indication that payments contrary to the terms of the regulations were actually being paid. The Tenth Circuit cases were based on the principle that since the claims for payment, aside from any falsity, were clearly not compensable under the respective government program regulations, they were incapable of influencing the decision of the government and thus were immaterial. *United States v. Radetsky, supra*, 535 F.2d at 571–74; *Bartlett & Co., Grain v. United States, supra*. But see *Brandow v. United States*, 268 F.2d 559, 565 (9th Cir. 1959); *United States v. Quirk*, 167 F.Supp. 462, 464 (E.D.Pa.1958), *aff'd*, 266 F.2d 26 (3d Cir. 1959).

In *United States v. Radetsky, supra*, 535 F.2d at 572 n. 17a, 573 & n. 23, the court recognized that actual loss to the government need not be shown, as the prosecution is only required to prove that the false statement is capable of inducing payment. *See also United States v. Jones, supra*, 464 F.2d at 1122. This requirement was amply satisfied in this case. In some instances payments were made to Voorhees on behalf of Missouri Slope in excess of 80% of the actual costs of hauling. Since Voorhees applied for and received such "illegal" payments, he is not now in a position to assert that his false statement was not material because it was incapable of producing illegal payments. Regardless of the validity of the regulations under which claims were submitted and paid, the facts remain that such payments were actually being made. One who receives such payments cannot escape criminal liability by claiming that the agency making the payments lacked authority to do so. *See United States v. Cole*, 469 F.2d 640, 641 (9th Cir. 1972). *Cf. Kay v. United States*, 303 U.S. 1, 5–7, 58 S.Ct. 468, 82 L.Ed. 607 (1937); *United States v. Kapp*, 302 U.S. 214, 217–18, 58 S.Ct. 182, 82 L.Ed. 205 (1937) (invalidity of statute under which false statement filed does not prevent a prosecution for making a fraudulent statement to the government while the act is being administered).

As stated earlier, Voorhees also argues that the altered lease was not material because no claims were made for hauls performed by Nelson after the lease had been altered. This argument ignores the fact that if an audit of the program was conducted (which it was), the altered lease could serve to conceal the true basis of past claims upon which payments had been made in connection with hauls by Nelson. By Voorhees' own admission he altered the Nelson lease in order to support claims for the own conveyance rate after he heard that the regulations required the lease to put the risk on the lessee to so qualify. He further admitted leaving the date of the altered lease as November 2. The use of a fraudulent statement for purposes of concealment is no less material than use of a fraudulent statement to influence a government decision in the first instance. *See United States v. Jones, supra*, 464 F.2d at 1122. In addition the lease could have induced payments on pending claims as well as provided support for claims that were to be filed in the future. Viewed in this light it is clear that the lease was material and, therefore, properly the subject of criminal charges under 18 U.S.C. § 1001. The judgment of the district court is affirmed.

Affirmed.