UNITED STATES of America, Appellee,

v.

William Wood COWDEN, Appellant.

No. 81–1732.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 18, 1981.

Decided May 19, 1982.

William J. Mauzy, Minneapolis, Minn., for appellant.

John M. Lee, Ann D. Montgomery, Asst. U. S. Attys., Dist. of Minn., Minneapolis, Minn., for appellee.

Gerald Weinrich, Legal Intern.

Before LAY, Chief Judge, and HENLEY and ARNOLD, Circuit Judges.

HENLEY, Circuit Judge.

Appellant William Wood Cowden was convicted after a jury trial of making a false customs declaration in violation of 18 U.S.C. § 1001. We reverse after careful review of the facts as set forth below.

On January 7, 1981 Cowden arrived at Twin Cities International Airport in Minneapolis-St. Paul, Minnesota by plane from Gatwick, England. He approached the customs inspection lane in the airport terminal, and was asked by Customs Inspector Dennis Gauster for his passport and Customs Form 6059–B. Upon receiving the form, Inspector Gauster noted that Cowden had not signed the declaration, although the ques-

tion portion of the form had been completed. The form was returned to appellant for the necessary signature.

At the time Cowden supplied a signature, he left unchanged his answer to question eleven. This question asks whether the traveller is carrying over $5,000.00 in monetary instruments.[1] Cowden had checked the "no" box.

After receiving the completed declaration, Gauster began his routine customs examination. Gauster asked appellant what the total value was of all items acquired outside of the United States. Appellant replied by directing the Inspector's attention to the declaration form and the items he had listed, namely a glass owl, cologne, and whiskey.

Inspector Gauster then began a manual examination of appellant's leather satchel-type briefcase. During this examination, Gauster ran his fingers underneath the flap at the bottom of the briefcase. He felt a parcel beneath the flap, and after lifting the parcel slightly, returned it to its place beneath the flap. Gauster did not remove the parcel from the briefcase at this time. He testified that he did everything possible to avoid arousing Cowden's suspicion. Cowden was three and one-half or four feet away from the Inspector during the examination of the briefcase.

Gauster then asked appellant if there was anything else he wished to add to his declaration. Cowden answered "no." Inspector Gauster waited a short period of time, and when no additional statements were forthcoming from Cowden, Gauster pointedly asked whether appellant was carrying over $5,000.00 in coin, currency or monetary instruments. Cowden immediately responded, "Yes, I would like to amend my declaration at this time."

Appellant was not permitted to amend his declaration as he had requested. Instead, Cowden and his baggage were moved to a secondary inspection area, where Gauster examined Cowden's other baggage, namely, a soft-sided suitcase. After conferring with his supervisor, Gauster also told Cowden that the currency was subject to seizure. Cowden's luggage was moved to a separate search room.

The suspect package was removed from Cowden's briefcase for the first time in the search room. The package proved to contain French francs, Swiss pounds, Swiss francs, and German marks worth $578.00 at the then-applicable rate of conversion, and $15,218.00 in United States currency.

Appellant was subsequently charged with violation of 18 U.S.C. § 1001, which forbids the making of false or fraudulent statements in a matter within the jurisdiction of a department or agency of the United States.[2] Following trial to a jury, appellant was found guilty of the alleged offense and was sentenced to thirty days in jail followed by probation.[3]

Appellant raises four arguments for reversal: (1) his response to the currency reporting requirement was not a statement as to a matter "within the jurisdiction" of a federal agency or department for purposes of 18 U.S.C. § 1001; (2) his false denial should be viewed as a mere "exculpatory no," and as such should not be considered a statement within the meaning of 18 U.S.C.

1. Question 11 on Form 6059–B reads in its entirety:

   Are you or any family member carrying over $5,000.00 (or the equivalent value in any currency) in monetary instruments such as coin, currency, traveler's checks, money orders, or negotiable instruments in bearer form? (*If yes, you must file a report on Form 4790, as required by law.*) Note: It is not illegal to transport over $5,000.00 in monetary instruments; however, it must be reported.
   (Emphasis shown as contained in Form 6059–B).

2. 18 U.S.C. § 1001 provides:

   Whoever, *in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully* falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. We are informed by counsel that Cowden was terminated from his employment at Lockheed within one year of retirement as a direct result of his conviction.

§ 1001; (3) his false written statement was promptly corrected by a true oral statement, and hence was not a material false statement; and (4) the evidence was insufficient to support the jury's finding of willful falsity.

We find it unnecessary to reach any issue other than that of materiality. Appellant argues that his false statement was not materially false, first because the false statement would not have had the effect of procuring for appellant any benefits or payments from the federal government, and second because the false written statement was almost immediately corrected by a true oral statement.

■ Appellant's first argument as to benefit or payment provides no basis for reversal. Although false statements chargeable under § 1001 are often calculated to procure a benefit or monetary payment, e.g., *United States v. Librach*, 602 F.2d 165, 166 (8th Cir. 1979) (false statement used to obtain urban renewal relocation payment), *aff'd following remand*, 609 F.2d 919 (8th Cir.), *cert. denied*, 444 U.S. 1080, 100 S.Ct. 1032, 62 L.Ed.2d 764 (1980); *United States v. Voorhees*, 593 F.2d 346 (8th Cir.), *cert. denied*, 441 U.S. 936, 99 S.Ct. 2061, 60 L.Ed.2d 665 (1979) (altered lease used to obtain federal disaster assistance payments), the test of materiality is not the capability of a false statement to induce a payment or benefit. *United States v. Adler*, 623 F.2d 1287, 1291 (8th Cir. 1980). Rather, a statement is material if it "has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made." *United States v. Voorhees*, 593 F.2d at 349, *quoting from Blake v. United States*, 323 F.2d 245, 246 (8th Cir. 1963).[4] A statement may be material where, as in the present case, no payments are at issue but where the false statement is made in the hope of influencing a pending investigation. *United States v. May*, 625 F.2d 186, 194 (8th Cir. 1980).

■ We note also that proof of the agency's actual reliance on the statement is not necessary to sustain a conviction. *United States v. Hicks*, 619 F.2d 752, 754 (8th Cir. 1980); *United States v. Jones*, 464 F.2d 1118, 1122 (8th Cir. 1972), *cert. denied*, 409 U.S. 1111, 93 S.Ct. 920, 34 L.Ed.2d 692 (1973). The test of materiality involves only the *capability* of the statement to influence the agency's operations.

As to such capability here, the pertinent facts involve the nature of the Customs Service's operations. The Customs Service receives and validates certain statutorily mandated reports. Under 31 U.S.C. § 1101, persons transporting monetary instruments exceeding $5,000.00 are required to file such statements as are required by the Secretary of the Treasury. The Secretary is authorized by 31 U.S.C. § 1053 to promulgate regulations to carry out this currency reporting requirement. Pursuant to this authority, the Secretary has designated the Customs Service as the recipient of various reports, as set forth more fully in the margin.[5]

---

4. We conclude that the above-stated test of materiality withstands any implications to the contrary in this court's seminal decision in *Friedman v. United States*, 374 F.2d 363 (8th Cir. 1967). The dispositive question in *Friedman* was whether a false statement to the FBI was a statement in a "matter within the jurisdiction" of the federal agency. *Id.* at 365.

Our reversal here is not based on analysis of agency "jurisdiction" as that term is used in 18 U.S.C. § 1001. We accordingly conclude that *Friedman* is not apposite here. We intend no reexamination of *Friedman*, and we expressly decline to comment here on the viability of *Friedman* in light of the Supreme Court's decision in *Bryson v. United States*, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969).

5. The Secretary has promulgated the regulation contained in 31 C.F.R. § 103.25(b), which states that the report of currency transportation required under 31 C.F.R. § 103.23(a)

shall be filed with the Customs Officer in charge at any Customs port of entry or departure, or as otherwise permitted or directed by the Commissioner of Customs.

The Customs Service uses Customs Form 6059–B to ascertain whether a passenger is carrying over $5,000.00. If he is, the Service requires the further filing of a detailed currency report on Form 4790 of the Internal Revenue Service of the Department of the Treasury.

Form 6059–B is one of several forms used by the Customs Service to carry out its information-gathering function.

Where a primary purpose of Customs Service operations is to obtain accurate information, a false answer is obviously "capable of influencing" this function adversely. As noted above, the government is not obliged to prove an influence *in fact* on the agency's operations. *United States v. Hicks, supra; United States v. Jones, supra.* Accordingly, we find no basis for reversal in Inspector Gauster's admission that he might have examined Cowden's luggage regardless of Cowden's answer on Form 6059–B.

Appellant's alternative argument against the materiality of his false statement, however, is persuasive. Cowden contends that his false answer to question eleven was almost immediately corrected by a true oral statement. Cowden states that he was willing and ready to complete Form 4790, but was prevented from doing so.

These facts, even when viewed in the light most favorable to the jury verdict, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), are disturbing. A traveller confronts the currency reporting requirements in a context that is admittedly and fundamentally prosecutorial. *See* 31 U.S.C. § 1051 (congressional statement of purpose authorizes the acquisition of information, including that covered by the currency reporting requirement, which would have a "high degree of usefulness in criminal, tax, or regulatory investigations"); *United States v. San Juan*, 405 F.Supp. 686, 693–95 (D.Vt.1975), *rev'd on other grounds*, 545 F.2d 314 (2d Cir. 1976). Congress enacted the Currency and Foreign

Transactions Reporting Act in hopes of apprehending tax evaders, racketeers, and other persons using foreign banks for illicit purposes. H.R.Rep.No. 91–975, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong.& Admin.News 4394, 4397–98. Against this background of anticipated criminal charges, it is incumbent upon the government to live within the letter as well as the spirit of its own regulations. The Customs inspection should be conducted so that the probable result is compliance with the law, not the eliciting of a violation of the law. *United States v. Gomez-Londono*, 422 F.Supp. 519, 526 (E.D.N.Y.1979), *rev'd on other grounds*, 553 F.2d 805 (2d Cir. 1977), and *aff'd without op.*, 580 F.2d 1046 (2d Cir. 1978); *see also* Note, *Fairness in Criminal Investigations Under the False Statement Statute*, 77 Colum.L.Rev. 316 (1977).

Specifically, Inspector Gauster's examination should have been conducted with strict adherence to the provisions of 19 C.F.R. § 148.16. This regulation permits amendment of a declaration up to the time an undeclared article is found.[6] Gauster testified that he "suspected" currency in Cowden's briefcase when he first felt the parcel at the bottom. Prior to appellant's oral amendment, however, the currency was not lifted from the briefcase or viewed by Gauster. Gauster admitted on cross-examination that he did not know whether Cowden saw him feeling the package in the briefcase. In fact, Gauster testified that he "did everything [he] could to prevent [Cowden] from knowing" the currency had been found.

We conclude that the currency was not found by Gauster before Cowden's attempted amendment. Accordingly, pursuant to 19 C.F.R. § 148.16, Cowden should have been permitted to amend his written decla-

---

**6.** 19 C.F.R. § 148.16(b) provides in pertinent part:

> *After examination is begun.* A passenger shall be permitted to add an article to his declaration after examination of his baggage has begun if, before any undeclared article is found, the passenger advises the examining officer that he has such an article and the

officer is satisfied that there was no fraudulent intent. Under no circumstances shall a passenger be permitted to add any undeclared article to his declaration after such article has been discovered by the examining officer.

(Emphasis in original.)

ration and to file a Form 4790.[7] *Cf. United States v. Chen*, 605 F.2d 433, 435 (9th Cir. 1979) (government agent acted unjustifiably when he destroyed Form 4790, leaving as the traveller's only extant statement the false Form 6059–B). It is manifestly unfair that a customs officer should make every effort to conceal his discovery of an item and then, once a passenger has requested to amend his declaration, to forbid amendment.

On the facts of this case, and because we conclude that the government's conduct contributed to the ultimate existence of a material false statement, we reverse the judgment of conviction. The case is remanded for entry of a judgment of acquittal.

---

7. We note but do not rely for reversal on Gauster's additional testimony regarding the cut-off point for permitting amendment. Counsel for Cowden asked: "Do you allow [a passenger] to amend the form at that point before you start examining things?" Gauster replied that "before the examination was done then, I would allow him to amend his declaration."

The phrase "before the examination was done" is highly and significantly ambiguous. One credible interpretation, and to our minds the most reasonable in the context of the question asked, is that Gauster would cut off amendments as soon as a luggage search was commenced. Such a cut-off point is premature. 19 C.F.R. § 148.16 permits amendment up to the time an item is found.