**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gene E. MEULI, Defendant–Appellant.**

No. 93–3073.

United States Court of Appeals,
Tenth Circuit.

Nov. 2, 1993.

Michael G. Katz, Federal Public Defender, Vicki Mandell–King, Asst. Federal Public Defender, Denver, CO, for defendant-appellant.

Randall K. Rathbun, U.S. Atty., Thomas G. Luedke, Asst. U.S. Atty., Topeka, KS, for plaintiff-appellee.

Before TACHA, BALDOCK, and KELLY, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Gene E. Meuli was convicted of eight counts of making a false statement, 18 U.S.C. § 1001, and one count of filing a false income tax return, 26 U.S.C. § 7206(1). Defendant appeals his convictions on all counts, and the district court's imposition of a $1,000.00 fine, U.S.S.G. § 5E1.2. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Defendant obtained a series of loans from the Federal Land Bank, Kansas,[1] and the Farmers Home Administration, a federal agency. These loans were secured by mortgages on Defendant's farm property in Kansas. Upon Defendant's defaults on these loans, the Federal Land Bank and the Farmers Home Administration obtained judgments foreclosing the mortgages. The two judgments obtained by the Federal Land Bank were in the amounts of $160,355.69 and $39,275.17. The subsequent sale of Defendant's property by the Farmers Home Administration was in the amount of $83,200.00.

In December 1989, Defendant mailed notices of bills due and payable and requests for taxpayer identification numbers to several bank officers of the Federal Land Bank at their home addresses. The worksheets at-

tached to the statements reflected that Defendant based the bills on the earlier judgments obtained by the bank against Defendant. In January 1990, Defendant sent these same officers Internal Revenue Service Forms 1099s. In these forms, Defendant alleged that he had paid $287,123.32 in non-employee compensation to each bank officer. Like the amounts on the earlier bills, the amounts listed on the 1099 forms reflected judgments obtained by the bank against Defendant. On the face of the 1099 forms was the following notice:

> This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Upon receiving the 1099 forms from Defendant, the bank office contacted the bank attorney, who in turn notified the United States Postal Inspection Service and the Internal Revenue Service ("IRS"). In February 1990, Defendant sent 1096 forms to the IRS claiming that he had paid non-employee compensation to the bank officers. To the 1096 forms, Defendant attached copies of the 1099 forms that he had previously mailed to the individual officers.

On his 1989 tax return, Defendant claimed entitlement to a $1,000,000.00 refund. The return, signed by Defendant, inaccurately indicated that he had received income of $1,600,000.00 in 1989 through default judgments.

Upon receiving the complaint concerning the 1099 forms from the Federal Land Bank attorney, the IRS initiated an investigation of Defendant in March 1990. On July 6, 1990, pursuant to a separate investigation, IRS Inspector Dwight Boesee met with Dwayne Mellies, who was involved in a similar scheme, and informed Mr. Mellies that he was serving grand jury subpoenas on various individuals involved in the scheme. The evidence at trial indicated that Defendant and Mellies were acquainted with each other, had been seen together, and Defendant's signa-

1. The bank is now known as the Farm Credit Bank.

ture appeared on sworn affidavits obtained by the IRS in the investigation of Mr. Mellies. On July 30, 1990, Inspector Boesee served Defendant with a subpoena for handwriting and fingerprint exemplars. Fifteen days prior to that, on July 16, 1990, Defendant completed and sent a corrected 1989 tax return to the IRS. On this amended return, Defendant stated that errors on his previous return were due to misinformed error. Defendant attached corrected 1096 and 1099 forms to this amended return.

Defendant's trial began on December 7, 1992.[2] The case was submitted to the jury late in the afternoon on December 8. During the initial instructions to the jury, the court gave a unanimity instruction pursuant to *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The jury left for the day without deliberating to return on December 9. At the end of the day on December 9, the jury indicated to the court that they were having difficulty reaching a verdict. At that time, the court gave the following supplemental *Allen* instruction:

> Members of the jury, I have your message that you're unable to reach a verdict on any of the counts in this case. I'm not ready to discharge you yet. I want you to work longer and hard on this case because it needs to be determined, if at all possible. I don't want anybody to give up an honest conviction in order to get a verdict, but I do want you to know we've been at it a day. That's a long time, I realize. In order [sic] words, we've had juries work a lot longer and a lot harder, so I do want you to return and work. I want to suggest to you, it might be better for you to recess, go home and get a fresh start tomorrow morning. If you want to work some more this evening that's fine. I would suggest, since you haven't been able to get together today, that you go home and get back tomorrow and start again. Which do you prefer?

The jury then recessed for the day and was instructed to return the next day at 9:30 a.m. Defendant did not object to this instruction.

The jury returned the next day, and after obtaining responses to three notes it sent to the court, the jury returned a verdict of guilty on all counts.

The district court sentenced Defendant to concurrent six-month terms of imprisonment on each count, to be followed by two years supervised release. The court also imposed a fine of $1,000.00. U.S.S.G. § 5E1.2.

Defendant raises six issues on appeal. Defendant claims (1) the evidence was insufficient to sustain his convictions on counts five through eight, (2) the indictment was multiplicious in charging the same offenses in counts one through four as in counts five through eight, (3) Defendant was subjected to double jeopardy by multiple convictions on counts one through four and five through eight, (4) Defendant's convictions on all counts should be reversed because Defendant filed amended forms with the IRS, (5) the district court erred in giving an *Allen* instruction to the jury during the course of deliberations, and (6) the court erred in imposing a fine on Defendant.

■ Defendant's first claim is that the evidence was insufficient to sustain his convictions on counts five through eight. The 1099 forms mailed to the bank officers formed the bases of these counts. Defendant argues that any false statements contained in the 1099 forms were not material in that they were incapable of influencing IRS action. Materiality is a question of law we review de novo. *United States v. Brittain*, 931 F.2d 1413, 1415 (10th Cir.1991).

■ To prove a violation of 18 U.S.C. § 1001, the government must show that the defendant knowingly and willfully made a false statement regarding a material fact that is within the jurisdiction of a federal agency or department. *Id.* The false statement need not be made directly to the agency or department, *United States v. Wolf*, 645 F.2d 23, 25 (10th Cir.1981), and the government need not prove that the Defendant had actual knowledge of the federal agency jurisdiction. *United States v. Yermian*, 468 U.S. 63, 69,

---

**2.** Defendant's initial trial on these counts ended in a mistrial when the jury was unable to reach a unanimous verdict.

104 S.Ct. 2936, 2939, 82 L.Ed.2d 53 (1984). Section 1001 "does not limit its prohibition of falsification to matters which another statute or regulation requires be provided." *United States v. Olson,* 751 F.2d 1126, 1127 (9th Cir.1985). Finally, "[a] false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the tribunal in making a determination required to be made." *Brittain,* 931 F.2d at 1415 (citation omitted).

 Defendant first argues that the false statements he made on the 1099 forms were not capable of influencing the IRS because the bank officers were under no obligation to forward that information *because it was false.* We reject this argument because § 1001 prohibits false statements whether or not another law requires the information be provided. We further note that to simply accept Defendant's argument would turn § 1001 on its head—*i.e.,* Defendant would be ultimately relieved from liability for making a false statement because of the falsity itself.

Defendant also argues that the false 1099 forms mailed to the bank officers were not capable of influencing IRS action on their own without the subsequent filing of the 1096 forms and 1099 forms with the IRS. We disagree.

 Defendant made the false statements on official IRS 1099 forms. The forms themselves contained a warning to the recipient that the information would be forwarded separately to the IRS, and if the recipient did not reflect this information in his income tax return, he did so at his peril. Given the importance of this information to the recipient, it is not only reasonably foreseeable, but inevitable, that the recipient would contact the IRS concerning these false statements. The bank officers in this case did, in fact, do so. It further follows that once put on notice, the IRS would initiate an investigation. Because the circumstances surrounding the false information that Defendant furnished the bank officers made it likely that they would contact the IRS, and because the false statements influenced the possibility that an IRS investigation would ensue, the false 1099 forms had the natural tendency or were capable of influencing the IRS, and were there-

fore material. *See e.g., United States v. Hansen,* 772 F.2d 940, 949 (D.C.Cir.1985) (false statement was material under § 1001 when it increased the possibility that investigation might commence), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986); *United States v. Dick,* 744 F.2d 546, 554 (7th Cir.1984) (false statements made to sureties were material where SBA would rely on statements sureties would in turn make to the SBA).

Defendant next contends that the indictment was multiplicious in charging the same offenses in counts one through four as in counts five through eight. The 1096 forms sent to the IRS formed the bases of counts one through four, and the 1099 forms mailed to the bank officers formed the bases of counts five through eight. Defendant argues that the mailings to the bank officers were not separate crimes from the mailings to the IRS; rather, they were part of the same continued conduct.

 "Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. Dashney,* 937 F.2d 532, 540 n. 7 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991). The same act or transaction may constitute separate offenses if each offense requires some fact not required to establish the other. *United States v. Larsen,* 596 F.2d 410, 411 (10th Cir.1979). In reviewing multiplicity claims we look to the language of the statute to determine whether Congress intended multiple convictions and sentences under the statute. *United States v. Morehead,* 959 F.2d 1489, 1506, *aff'd on reh'g en banc,* 971 F.2d 1461 (10th Cir.1992).

In *United States v. Bettenhausen,* 499 F.2d 1223, 1234 (10th Cir.1974), we examined the language of § 1001. In that case, the defendants were convicted of four counts of making a false statement where they submitted four different documents in support of a single tax return. *Id.* at 1234. The defendants argued that there was only one offense under the statute because they had submitted all the documents at one time. *Id.* Looking to the language of § 1001, we rejected that argument, stating:

in the clause [of § 1001] we are concerned with the statute turned to the singular terms—"any false writing or document...." We feel the statute aims at the making or using of each "false writing or document" and intends the wrong connected with each to be a separate offense.

*Id.* (quoting 18 U.S.C. § 1001).

■ Under our reasoning in *Bettenhausen,* we hold that Defendant was not subjected to a multiplicious indictment; rather, the false statements on the 1099 forms were separate and distinct criminal acts apart from the false statements Defendant made on the 1096 forms. Defendant made the false statements on entirely different forms. He sent the forms to different parties—the 1099 forms to the bank officers and the 1096 forms to the IRS. Defendant sent the 1099 forms to the bank officers on January 23, 1990, and he did not send the 1096 forms to the IRS until February 27, 1990. The proof required to support counts one through four was entirely different from the evidence that supported counts five through eight. In other words, "each offense require[d] some fact not required to establish the other." *See Larsen,* 596 F.2d at 411. As in *Bettenhausen,* each of Defendant's false statements was a separate offense under § 1001.[3]

■ Defendant contends that his convictions on all counts should be reversed because, he alleges, he filed amended forms with the IRS prior to being put on notice that he was the subject of an IRS investigation. Defendant sent the amended 1989 tax return along with corrected 1096 and 1099 forms to the IRS on July 16, 1990. On July 30, 1990, Defendant was first served with a subpoena pursuant to the ongoing investigation against him. Defendant failed to raise this argument below; therefore we only review for plain error. *United States v. Jefferson,* 925 F.2d 1242, 1254 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991).

Defendant relies on an Eighth Circuit case, *United States v. Cowden,* 677 F.2d 417, 420 (8th Cir.1982). In *Cowden,* the court overturned a conviction under § 1001 because the defendant had corrected a prior false statement—wherein he falsely denied having more than $5,000.00 in currency—before the Customs officials discovered the currency. *Id.* at 420. The court explained that the conviction could not stand because Customs regulations permitted a traveller to amend his declaration up to the time an undeclared article is found, and the defendant had amended his prior false statement and declared the currency before Customs officials discovered it. The government argues that the instant case is more closely related to *United States v. Fern,* 696 F.2d 1269 (11th Cir.1983). In *Fern,* the court found *Cowden* inapposite and upheld the defendant's conviction because he "changed his story only after the [IRS] became suspicious." *Id.* at 1275.

■ We conclude that it was not plain error for the jury to have convicted Defendant on all counts despite the subsequent amendment of his 1989 tax return, 1096 forms, and 1099 forms he sent to the IRS. At the outset, we uphold Defendant's convictions on counts five through eight because Defendant never sent amended 1099 forms to the bank officers. As to counts one through four, we hold that there was sufficient evidence from which the jury could have concluded that Defendant knew, prior to July 16, 1990, that the IRS had become suspicious of his activities. In fact, the IRS had not only become suspicious of Defendant, it had begun a formal investigation of Defendant in March 1990. The government presented evidence that Mr. Mellies was involved in a similar scheme and was the subject of an IRS investigation, Defendant knew Mr. Mellies, and Defendant's signature was on certain documents discovered in the IRS's investigation of Mr. Mellies. Furthermore, Inspector Boesee testified that he informed Mr. Mellies on July 6, 1990 that the IRS would be serv-

---

**3.** Because we have concluded that counts one through four were separate offenses requiring different proof from counts five through eight, we also reject Defendant's double jeopardy claim. *See Miranda v. Cooper,* 967 F.2d 392, 403 (10th Cir.) (double jeopardy clause not offended so long as separate counts based upon different facts), *cert. denied,* —— U.S. ——, 113 S.Ct. 347, 121 L.Ed.2d 262 (1992).

ing grand jury subpoenas to various individuals involved in this scheme. From this evidence, together with Inspector Boesee's testimony that it was common practice for those under investigation to file amended returns, the jury could conclude that Defendant knew, prior to July 16, 1990, of the IRS's investigation of Mr. Mellies, and also was put on notice, through Mr. Mellies, that the IRS was suspicious of him. In such case, Defendant's amended return, 1096 forms, and 1099 forms came too late. *See Fern,* 696 F.2d at 1275 (§ 1001 conviction upheld where defendant does not correct statement until he knew IRS was suspicious).

Defendant claims that the district court erred in giving an *Allen* instruction to the jury during the course of deliberations. *See Allen,* 164 U.S. 492, 17 S.Ct. 154 (1896).[4] Because Defendant failed to object below, we review for plain error. *See Jefferson,* 925 F.2d at 1254.

■ In determining whether an *Allen* instruction is permissible, we make a "case by case examination to determine whether the taint of coercion was present." *United States v. Porter,* 881 F.2d 878, 888 (10th Cir.) (citing *Munroe v. United States,* 424 F.2d 243, 246 (10th Cir.1970)), *cert. denied,* 493 U.S. 944, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). Although we generally prefer that an *Allen* instruction be given at the same time as other instructions, there is no per se rule, and we have previously found that *Allen* instructions given during the course of deliberations were not unduly coercive. *See e.g., id.* at 889; *United States v. McKinney,* 822 F.2d 946, 951 (10th Cir.1987). In *Porter,* we approved of an *Allen* instruction given during jury deliberation where (1) the instruction was not directed specifically at jurors holding the minority view, (2) the jury indicated that it was not hopelessly deadlocked, and (3) after giving the supplemental *Allen* instruction, the court excused the jury until the following morning. 881 F.2d at 889.

■ We conclude that the district court's delivery of a supplemental *Allen* instruction

in the instant case was not plain error. The court delivered the instruction to all members of the jury, and in no way directed its comments to those in the minority. Moreover, within the context of the *Allen* instruction, the court emphasized to the jury, "I don't want anybody to give up an honest conviction in order to get a verdict." Finally, the court alleviated any potential coercion by allowing the jury to be excused until the following day.

■ Defendant's final argument on appeal is that the court erred in imposing a fine of $1,000.00. Defendant contends that he met his burden of establishing his inability to pay a fine. *See* U.S.S.G. § 5E1.2 (imposition of fine mandatory unless Defendant shows inability to pay). We review the imposition of a fine under the Sentencing Guidelines for an abuse of discretion. *United States v. Washington–Williams,* 945 F.2d 325, 326 (10th Cir.1991).

■ Although, at the time of sentencing, Defendant had a negative monthly cash flow of $23.00, the court concluded that a fine was appropriate because Defendant lacks any significant financial debt, holds a Master of Science in Education, and has demonstrated an ability to maintain gainful employment. Given these factors, and the fact that the fine is at the lowest range of the applicable Guideline, *see* U.S.S.G. § 5E1.2(c)(3) (proscribing fine from $1,000.00 to $10,000.00 for Defendant's offense level), we conclude that the district court did not abuse its discretion in imposing a fine of $1,000.00 on Defendant.

AFFIRMED.

---

4. In *Allen,* the Supreme Court approved of the court's instructions to the jury wherein the court admonished the jurors that it was their duty to decide the case if they could conscientiously do

so, and that although the verdict should represent the opinion of each individual juror, jurors should consider each other's arguments with due deference. 164 U.S. at 501, 17 S.Ct. at 157.