**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Leroy R. JOHNSON,**
**Defendant-Appellant.**

No. 75–2993.

United States Court of Appeals,
Fifth Circuit.

April 15, 1976.

Edward T. M. Garland, Atlanta, Ga., Howard Moore, Jr., Oakland, Cal., for defendant-appellant.

John W. Stokes, U. S. Atty., John M. Turner, III, Gale McKenzie, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before DYER and CLARK, Circuit Judges, and KRAFT *, District Judge.

DYER, Circuit Judge:

Johnson appeals his jury conviction for violating 18. U.S.C.A. § 1001 [1] by provid-

---

* Senior District Judge of the Eastern District of Pennsylvania, sitting by designation.

1. Section 1001 provides in pertinent part:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully . . makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

ing a materially false affidavit to the Internal Revenue Service (IRS) in the course of an investigation of criminal tax fraud. We affirm.

In May, 1971, the IRS began a field audit of Johnson's tax returns for 1969. During this audit, discrepancies were found between the amount of Johnson's bank deposits and the amount of income that he reported to the Service in 1969 and 1970. Johnson was confronted with the discrepancies, but was unable to identify all the non-income deposits. As a result, a criminal tax fraud investigation was begun by the Service.

During the investigation, IRS agents met with Johnson on various occasions, advising him of his constitutional rights three different times. Following these meetings the agent responsible for the investigation recommended to his superior on August 24, 1973, that Johnson be prosecuted for willfully attempting to evade personal income taxes for the taxable years 1967 through 1970.

About two months later, two attorneys representing Johnson met with counsel from the Criminal Tax Section of the IRS Regional Counsel's office. During this conference, one of Johnson's attorneys stated that during the taxable years in question, Johnson had received gifts which would explain the inconsistencies in the tax audit. He further stated that he wished to produce affidavits from the various donors to identify the amounts and dates of the gifts.

On November 7, 1973, Johnson met with E. A. Isakson and asked him to submit an affidavit stating that he had made gifts to Johnson in 1969 and 1970 in the amount of $5,000 even though Isakson had never made such donations. Two weeks after this meeting Isakson told his attorney of Johnson's request. The attorney notified the United States Attorney who then contacted the special IRS agent in charge of the criminal investigation.

On November 29, 1973, Isakson signed an affidavit furnished to him by Johnson which stated that he had made cash gifts to Johnson in varying amounts in 1969. Four days later, an attorney representing Johnson delivered this and five other affidavits to the IRS Regional Counsel's office. These six affidavits were turned over to the Intelligence Division of the IRS which then conducted a supplemental investigation.

On May 7, 1974, Johnson was indicted. In Counts I–IV he was charged with filing false and fraudulent tax returns for the years 1967 through 1970. In Count V he was charged with the § 1001 violation as a result of the submission of the Isakson affidavit.

Counts I and II were withdrawn by the government after the district court severed them from the trial on the other counts. Johnson was acquitted on Counts III and IV, but was found guilty on Count V. This appeal ensued.

 Johnson first argues that the false affidavit was not material[2] to the IRS investigation because it was not intrinsically capable of influencing the decision to prosecute.[3] He reasons that since the affidavit contained no statement of the amount of the gift, it could not have affected the net worth calculations made by the Service in the investigation. He further argues that the decision to prosecute was "final for all practical purposes" when the investigating agent submitted his report on August 24, 1973; therefore, the Isakson affidavit was immaterial to the decision to prosecute. This is especially true, Johnson says, because the Service knew that it had been solicited and that, according to the affiant Isakson, its contents were false.

---

2. Although the second clause of § 1001 does not contain a materiality requirement, we have held that one exists. *Rolland v. United States*, 5 Cir. 1953, 200 F.2d 678.

3. Materiality for § 1001 purposes has been defined to mean "whether the false statement has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made." *Weinstock v. United States*, 1956, 97 U.S.App.D.C. 365, 231 F.2d 699, 701–02.

 

We disagree. The natural and probable tendency of the affidavit to influence the decision to be made must be judged by the content of the document itself and not by any special knowledge possessed or acquired by the Service. Had the Isakson affidavit been true, the discrepancies between income reported and alleged income received might have disappeared, Johnson's tax liability for 1969 might have been reduced or eliminated, and no prosecution would have occurred. That no amount was specified in the affidavit does not mean that the affidavit was not material; to the contrary, it gave Johnson the greatest leeway to explain the source of his income.[4] Finally, the decision to prosecute was not made final until sometime *after* the affidavits were submitted to the Regional Counsel's office on December 3 and a supplemental investigation was conducted.[5]

 Johnson next contends that the submission of the affidavit falls within the "exculpatory 'no'" exception to Section 1001. *United States v. Bush*, 5 Cir. 1974, 503 F.2d 813; *Paternostro v. United States*, 5 Cir. 1962, 311 F.2d 298. While it is true that Section 1001 does not apply to mere answers, including untruthful ones, to investigators' questions, this is not such a case. The IRS did not solicit the affidavit; Johnson took the initiative in proffering it through his attorney. Johnson knew of the criminal investigation and had been given *Miranda* warnings on several occasions. Nonetheless, he affirmatively and voluntarily misrepresented a material fact in order to convince the Service not to prosecute. On these facts, the exception is unavailable.

Finally, Johnson argues that Count V of the indictment was insufficient to state an offense under Section 1001. We find this argument to be without merit.

AFFIRMED.

---

4. The affidavit, of course, was not used at trial to refute the alleged 1969 tax liability. But that does not destroy the materiality of the statement *had it been true* at a point in time when the IRS was attempting to decide whether to prosecute Johnson.

5. If Johnson's argument that the decision to prosecute was made on August 24, were true, it is curious that his counsel bothered to meet with IRS counsel after that date and why the Isakson affidavit and the five accompanying it were solicited and submitted.