**UNITED STATES of America, Appellee,**

v.

**William F. POUTRE, Defendant, Appellant.**

No. 79–1193.

United States Court of Appeals, First Circuit.

Reheard Aug. 1, 1980.

Decided Dec. 31, 1980.

Francis J. DiMento, Boston, Mass., with whom Constance A. Fitzgerald and DiMento & Sullivan, Boston, Mass., were on brief on rehearing, for defendant, appellant.

James A. Bruton, Atty., Tax Division, Dept. of Justice, Washington, D. C., with whom M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Robert E. Lindsay, Attys., Tax Division, Dept. of Justice, Washington, D. C., Edward F. Harrington, U. S. Atty. and Charles E. Chase, Asst. U. S. Atty., Boston, Mass., were on brief on rehearing, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

PER CURIAM.

On April 4, 1980 a panel of this court issued an opinion setting aside a conviction for violation of 18 U.S.C. § 1001,[1] and ordering the indictment dismissed. The prosecu-

---

1. Section 1001 makes it a criminal offense, punishable by a $10,000 fine and/or five years of imprisonment, for anyone knowingly to falsi-fy a material fact or make any false statement "in any matter within the jurisdiction of any department or agency of the United States".

tion of appellant arose out of a tax investigation of one Petruzziello, purchasing agent for the First National Bank of Boston, to determine if he had received kickbacks from suppliers and failed to report them on his income tax returns. Appellant, a salesman for one of the bank's suppliers, the General Envelope Company, was interviewed by IRS agents and asked questions about a purported gift of an automobile by General Envelope to Petruzziello. Appellant was indicted and convicted under one count (among others not here relevant), for responding that he did not know if a certain check was related to the transfer, that he was unfamiliar with the terms of such transfer, and that he played no part in Petruzziello's acquisition of the automobile. The panel, citing *United States v. Chevoor*, 526 F.2d 178, 183 (1st Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976), with one judge dissenting and one judge reluctantly concurring only because of *Chevoor*, extended to merely negative answers given IRS agents by a non-target declarant the judicially created "exculpatory no" immunity from § 1001 prosecution that courts have generally accorded such answers when given to FBI agents.

We have vacated the panel decision and now reconsider the case *en banc*. The judicial engrafting of an "exculpatory no" exception on a facially all-inclusive statute is supported by the rationale that the statute, if taken literally, would do all the work traditionally expected of perjury statutes free of the latters' burdens and safeguards. We nevertheless acknowledge the arbitrariness of a court-drawn line between affirmative and exculpatory negative responses.

We are also aware that legislative therapy for § 1001 seems an increasing likelihood as the revision of Title 18 of the United States Code inches closer to final resolution.[2] We therefore are not eager to consider further development of the "exculpatory no" doctrine at this time. Nor do we see any necessity to address that doctrine in the case at bar, for we see a narrower basis for decision in a fatal lack of fit between the charges in the indictment and the evidence.

The only count of the indictment relevant to this appeal, Count Three, charged three false statements in these terms: (1) "that [appellant] did not know if a check drawn on an account in the name of General Envelope Co., Inc., in the amount of $2900 and made payable to [appellant] was related to the transfer of an automobile between Norman White, President of General Envelope Co., Inc., and Stephen Petruzziello"; (2) "that he was unfamiliar with the terms of the transfer"; (3) and "that he played no part in Stephen Petruzziello's acquisition of the automobile."

The evidence related to interrogations of appellant by a Special Agent of the IRS on July 6, 1977. Appellant, on request, visited Agents Conole and Murphy in their Boston headquarters. An oath was administered and he responded to questions. His answers were not recorded but Agent Conole made notes. Then appellant agreed to repeat his answers to questions with a stenographer present. Another oath was administered and a question and answer session was recorded for about twenty minutes, this transcript being reviewed and approved by appellant a month later. Finally, also on

---

**2.** As of the date of this opinion, versions of the long-awaited revision of the federal criminal code have been favorably reported by the judiciary committees of both houses of Congress (H.R.6915, S.1722, 96th Cong., 2d Sess.). Each version significantly narrows the scope of the existing false statements provision while grading the offense less severely. The House provision, § 1742, covers only written or recorded statements, thereby avoiding the dangers associated with the lack of a reliable transcript. The House bill reduces most false statement offenses to misdemeanors, punishable by a maximum term of imprisonment of twelve months as compared to five years under existing law, and grades as a class E felony (eighteen months) false statements made in an investigation by the Inspector General. The Senate version takes a different approach, covering unrecorded oral statements, but requiring corroborating evidence in such prosecutions. §§ 1343(a)(1)(A), 1346(b)(4). The Senate bill incorporates the "exculpatory no" doctrine as a grading device, classifying such statements as class A misdemeanors (twelve months) and all other false statements as class E felonies (two years).

July 6, Agent Conole drafted and had typed a "contact memorandum" setting forth his version of what had occurred. Only Agent Conole testified at trial on the events of this day and the only document admitted into evidence was the transcript of questions and answers.[3]

There thus appear three vehicles carrying evidence to the jury: Agent Conole's testimony reflecting data he had written in the "contact memorandum"; Agent Conole's testimony which reflects data not in that memorandum; and appellant's answers in the transcribed interrogation. Each of these vehicles contains one or more, but not all, of the three statements charged in Count Three, as the following recapitulation indicates.

—The evidentiary basis for the first statement (that appellant denied that he knew the $2900 check was related to the transfer of the automobile) is in two places. In the transcript of appellant's testimony, in answer to the inquiry whether he had any idea if the check was "related to that automobile", the following appears:

"I do not know. It could have been. I cannot say until I said to you I would like to check that voucher number out of that check at General Envelope."

After Agent Conole was asked to read the above excerpt, he testified that during the oral interview preceding the transcribed question and answer session, appellant said merely that "he didn't know, he had no knowledge of it." There is no indication that this also appeared in the contact memorandum.

—The basis for the second statement (that appellant said that he was unfamiliar with the terms of transfer of the automobile) lies only in an affirmative response by Agent Conole to a leading inquiry by government counsel, after he had earlier admitted that this statement nowhere appeared in the transcribed testimony. He later admitted that this item did not appear in his contact memorandum either.

—The basis for the third statement (that appellant said that he played no part in the acquisition of the automobile by Petruzziello) is testimony by Agent Conole of his recollection of the untranscribed oral interview. This recollection is also reflected in the contact memorandum, but there is no such language to be found in the transcribed testimony.

At the close of all the evidence appellant moved for, inter alia, an acquittal under Count Three. Counsel argued that the first statement, a denial of knowledge followed immediately by the qualification that appellant would like to see further verification, could not be the basis of a conviction. He added that the government should not be allowed to seize upon a prior shorter answer without the qualification, made in the absence of the stenographer. Counsel pointed out, as to the second statement that appellant was "unfamiliar" with the terms of any transfer, that this language appeared nowhere in the agent's notes or transcribed testimony, and, similarly, that the "played no part" statement was not to be found in the question and answer transcript.

We first examine the legal sufficiency of the evidence in the transcript of questions and answers and ask if this is enough to support the jury verdict. Without repeating the three sentences quoted earlier in response to the question whether appellant had any idea if the check was "related" to the transfer of the automobile, we observe that, taken together as the jury must take them, they add up to neither an affirmation nor a denial of present knowledge but an acknowledgement, subject to verification, that a relationship was possible. In reality this answer, qualifying the truly responsive part ("I don't know") with the acknowledgement of the possibility and identification of the means of checking is just as much a nonresponsive and literally true answer as that in *Bronston v. United States,*

3. The appendix contains the contact memorandum which, though not admitted into evidence, was referred to by the witness in his testimony.

409 U.S. 352, 354, 93 S.Ct. 595, 598, 34 L.Ed.2d 568 (1973). Here, as in *Bronston*, the fact that a jury may have found that appellant intended to mislead or derail his questioner is "no answer". *Id.* at 359, 360, 93 S.Ct. at 600, 601. Here, as in *Bronston*, such "a testimonial mishap" presents no real barrier to "flush[ing] out the whole truth." *Id.* at 358–59, 93 S.Ct. at 600. In any event, we cannot conceive of a prosecution being launched or a conviction of guilt being obtained were this the only evidence.

■ Upon examining the oral evidence, we conclude that it too is insufficient and, accordingly, we must vacate the judgment of conviction. The abbreviated testimony of Agent Conole that appellant stated simply that he did not know of any relationship of the check to the automobile is at odds with the equivocal longer statement in the transcript.[4] The statement as to appellant's unfamiliarity with the terms of transfer of the automobile appeared in neither the transcribed interrogation nor the memorandum prepared by the agent at the end of the day, but only as a brief reply to the prosecutor. The statement that appellant "played no part" in the acquisition of the automobile by Petruzziello, although appearing in the memorandum, was not to be found in the transcribed testimony. We note also that although Agent Murphy was present, he did not testify. So what we have is testimony by one agent, not replicated either at all or very substantially in the one opportunity to record what was actually said, and, as to one item, not even recorded in his own wrap-up memorandum.

■ As we have seen in our consideration of the written testimony, what is actually said by a defendant becomes a critically important part of any prosecution under

§ 1001. While we do not hold that a verbatim transcript or written statement is required per se in prosecutions under 18 U.S.C. § 1001, we do conclude that where a transcript of some answers has been taken with no apparent constraint on the interrogators to cut short their inquiry, where two of the three allegedly false answers are not included in such transcript, and where one of the three statements is found only in a solitary prosecution witness' testimony without any contemporary corroboration, such oral evidence is too fragile to support a guilty verdict. *Cf. United States v. Clifford*, 426 F.Supp. 696, 702–03 (E.D.N.Y. 1976); *United States v. Ehrlichman*, 379 F.Supp. 291, 292 (D.D.C.1974).

*Reversed.*

---

4. Particularly suggestive in this regard is the qualifying language following appellant's transcribed denial of knowledge that the check was related to the transfer of the car. The broken syntax strongly indicates the omission of a word or words from the transcript. The most natural reconstruction of the apparent mistranscription is: "I don't know. It could have been. I cannot say until [as] I said to you I would like to check that voucher number out on that check at General Envelope." We thus have in

the very statement relied upon by the government—which we have held inadequate to support the conviction—evidence that appellant similarly qualified his earlier oral denial of knowledge. That this exculpatory evidence is literally consistent with Agent Conole's terse recounting of appellant's oral statement is a telling illustration of the need in false statement prosecutions for reliable evidence of precisely what was said.