UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald N. FERN, Defendant-Appellant.

No. 81–6235.

United States Court of Appeals,
Eleventh Circuit.

Jan. 17, 1983.

Kenneth L. Ryskamp, Miami, Fla., for defendant-appellant.

Kent S. Robinson, Asst. U.S. Atty., Miami, Fla., Glenn L. Archer, Jr., Dept. of Justice, Tax Division, Michael L. Paup, Washington, D.C., for plaintiff-appellee.

Before RONEY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

Fern appeals his jury conviction for violating 18 U.S.C. § 1001[1] by making a materially false statement to an Internal Revenue Service Tax Auditor.[2] He asserts that § 1001 is inapplicable within the parameters of this case; that it was error for the Court to hold that his statement was material; that the evidence was insufficient to sustain a conviction; and that Fern was never identified as the person who made the false statement. We disagree and affirm.

When the evidence is viewed in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), it shows the following facts:

Fern was a practicing accountant. On April 19, 1974 he and an investment partner executed an agreement to provide the New Testament Baptist Church with $125,000 in gifts. On April 25, 1974 Fern and his partner purchased property from Dade Christian School, a sister organization of the church. On that date $50,000 was paid to the church.

In late December 1974, Fern asked his client Brumer if he would make a $25,000

---

1. Section 1001 provides in pertinent part:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully . . . makes any false, fictitious or fraudulent statements or representations . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. Count 2 of the Indictment returned against Fern charged him with submitting a document which falsely stated that a $25,000 payment made by his client Brumer was a charitable contribution. The jury deadlocked on Count 2 and a mistrial was declared.

contribution to the church which would be tax deductible. He told Brumer that the money would be used to pay off pledges to the church in place of a mortgage, and that the money would be paid off at the time of the sale of the property. Brumer made out his check to the church for $25,000 and gave it to Fern, who delivered it to the church. The church treated the check as a contribution, and cancelled the $75,000 indebtedness of Fern in exchange for the Brumer check.

In January 1975, Brumer decided not to claim his $25,000 payment as a charitable deduction and asked Fern for repayment. On Fern's partnership tax return the $25,000 was listed as a liability. When Fern sold the property he had acquired from the church on April 1, 1975, Fern gave Brumer a check for $25,000, which included a notation that it was for repayment of a loan.

In March 1975 (before the repayment of $25,000 from Fern to Brumer), Fern suggested that Brumer take the $25,000 as a charitable deduction. Brumer told Fern that he did not want to take it as a tax deduction and that it was not to be claimed on his 1974 tax return.

In the spring of 1976, the Internal Revenue notified Brumer that it would audit his 1974 return, having challenged deductions claimed by Brumer for air conditioning repair and a part of his daughter's wedding expense. Fern attended the audit interview on May 17, 1976 with Tax Auditor Wilson. After Wilson indicated that she would disallow the challenged deductions, Fern stated that Brumer had found a deduction that he had not claimed on his tax return and that he, Fern, would like to submit it to her. He said that it was a contribution, and handed Wilson a copy of a cancelled check made out to the New Testament Baptist Church in the amount of $25,000. Wilson examined the check, marked it into her worksheet, checked a rough copy of Brumer's 1975 return given to her by Fern to ascertain whether the payment had been claimed for that year, and then told Fern she would accept it as a charitable contribution.

After this interview Wilson telephoned and wrote Fern requesting further verification of the contribution. By mail she received a copy of a letter from the church to Brumer thanking him for the $25,000 gift and a letter directly from the church erroneously indicating that no contribution had been received from Brumer.

As a result of the conflicting letters from the church, Internal Revenue Service Auditor Eddins called Fern and asked if there was a contribution made by Brumer. Fern told him there was a contribution made to the church but that Brumer was uncertain whether or not he would take credit for it. Later Fern told Eddins that after discussing the matter further with Brumer they had decided not to claim a deduction. However, such a conversation between Fern and Brumer had not taken place after the audit.

Fern first urges that he could not be prosecuted under § 1001 because the application of the statute in this case would reach a patently absurd result. In any event, it is argued, the Government should be required to proceed under the more specific, tax-related misdemeanor statute, 26 U.S.C. § 7207. We find no merit to these contentions.

Fern's absurdity-result argument rests upon *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). There the Court held that even though there was a violation of the literal terms of the National Prohibition Act, the conviction could not be upheld in the light of admitted entrapment, saying "[t]o construe statutes so as to avoid absurd or glaringly unjust results, foreign to the legislative purpose, is, as we have seen, a traditional and appropriate function of the courts." *Id.* at 450.

Lifting this sentence out of context, Fern argues that to apply § 1001 here creates the absurd result of swallowing up the perjury statute contrary to Congressional intent.[3] We disagree.

---

**3.** Fern also relies on *Friedman v. United States,* 374 F.2d 363 (8 Cir.1967), to bolster his absurd-

ity-result argument. There the defendant made a voluntary statement to the F.B.I. complaining

*Sorrells* was careful to point out that "the case lies outside of the purview of the Act" and that "its general words should not be construed to demand a proceeding ... abhorrent to the sense of justice."

Quite unlike *Sorrells* the opposite is true here. The purpose of § 1001 is clearly to protect the Government from fraud and deceit. The reach of the statute covers all materially false statements, including non-monetary fraud, made to any branch of the Government. *United States v. Bramblett,* 348 U.S. 503, 506–07, 75 S.Ct. 504, 506, 99 L.Ed. 594 (1955). Moreover, the term "jurisdiction" should not be given a narrow or technical meaning for purposes of § 1001. *Bryson v. United States,* 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969). As we said in *United States v. Lichenstein,* 610 F.2d 1272, 1278 (5 Cir.1980) the statute prohibits a false statement

> that is *capable* of affecting or influencing the exercise of a government function. *United States v. Goldfine,* 538 F.2d 815, 820 (9 Cir.1976); *United States v. McGough,* 510 F.2d 598, 602 (5 Cir.1975). That, as here, the government is not actually influenced by the statement is immaterial. *Goldfine,* 538 F.2d at 820–21. *Accord, [United States v.] Beer,* 518 F.2d [168,] at 172 [ (5 Cir.1975) ] (dictum). The potential effect on the Government need not involve pecuniary loss. *United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 85 L.Ed. 598 (1941); *United States v. Krause,* 507 F.2d 113, 117 (5 Cir.1975). The false statement must simply have the capacity to impair or pervert the functioning of a governmental agency.

Clearly, the Internal Revenue Service is a "department or agency" of the United States. *See United States v. Beacon Brass Co.,* 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61 (1952); *United States v. Johnson,* 530 F.2d 52 (5 Cir.1976), *cert. denied,* 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976). A false material oral statement made to a tax auditor falls within the purview of § 1001. *United States v. McCue,* 301 F.2d 452 (2 Cir.1962), *cert. denied,* 370 U.S. 939, 82 S.Ct. 1586, 8 L.Ed.2d 808 (1962).

Fern made an affirmative, unsolicited, false statement which caused a tax auditor to initially conclude that an additional charitable deduction was due the taxpayer. If it was material, the statute applies for "[p]erversion of a governmental body's function is the hallmark of a § 1001 offense." *United States v. Lambert,* 501 F.2d 943, 946 (5 Cir.1974) (en banc).

Relying on *United States v. Beer,* 518 F.2d 168 (5 Cir.1975), Fern argues that Congress never intended that 18 U.S.C. § 1001 should be used to prosecute false statements made to the Internal Revenue Service since a specific statute, 26 U.S.C. § 7207 [4] is applicable, and a specific statute controls a more general one. [5] Fern's reliance on *Beer* is misplaced. While it is true that we expressed a preference for prosecution under specific statutes, we expressly declined to reverse a § 1001 prosecution on that ground despite the presence of a more specific statute, § 1005, and despite the fact that the § 1001 penalty was twice as severe as the penalty provided in § 1005. In commenting on *Beer,* we said in *United States v. Carter,* 526 F.2d 1276, 1278 (5 Cir.1976);

---

of mistreatment by a highway patrolman. The statement was false and he was prosecuted under § 1001. The Court of Appeals reversed his conviction. However, the Fifth Circuit, sitting *en banc* in *United States v. Lambert,* 501 F.2d 943 (5 Cir.1974), explicitly refused to adopt the *Friedman* holding. The Court held that a false statement concerning possible criminal conduct was within the jurisdiction of the F.B.I. and amenable to § 1001.

**4.** 26 U.S.C. § 7207 provides:

Any person who willfully delivers or discloses to the Secretary or his delegate any list,

return, account, statement, or other document, known by him to be fraudulent or to be false as to any material matter, shall be fined not more than $1,000 or imprisoned not more than one year, or both...

**5.** We are not called upon to determine whether 26 U.S.C. § 7207 applies to oral statements or only to written statements. Fern argues it, even though he concedes that there is no case law to support the application of that section to an oral statement. We adopt Fern's argument for the purposes of discussion only.

"Many statutes in the Criminal Code overlap, and the Government may elect the provision under which it wishes to proceed. *Erlich v. United States,* 238 F.2d 481 at 485 (5 Cir.1976). Although we recently indicated a preference for prosecution under specific false statements statutes, we declined to reverse the conviction on grounds that 18 U.S.C. § 1001 had been chosen for prosecution." The Supreme Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants. . . . Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion. . . .

. . . .

There is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of the statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements.

*United States v. Batchelder,* 442 U.S. 114, 123–125, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (citations omitted).

■ Fern's argument is categorically foreclosed by the Ninth Circuit in *United States v. Schmoker,* 564 F.2d 289 (9 Cir. 1977) (concurring opinion) in which the Court said, "the Government [may] choose to prosecute a taxpayer who makes a false statement to an Internal Revenue agent for a felony, under the general false statement statute, 18 U.S.C. § 1001, rather than for a misdemeanor, under 25 U.S.C. § 7207, a statute specifically directed to persons who made false statements to the Internal Revenue Service." (Citations omitted). To the same *effect see, United States v. Beacon Brass Co.,* 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61 (1952); *United States v. Carpenter,* 611 F.2d 113 (5 Cir.1980); *United States v. Gor-*

*don,* 548 F.2d 743 (8 Cir.1977); *United States v. Radetsky,* 535 F.2d 556 (10 Cir. 1976); *United States v. Smith,* 523 F.2d 771 (5 Cir.1975); *United States v. Burnett,* 505 F.2d 815 (9 Cir.1974); *United States v. Chakmakis,* 449 F.2d 315 (5 Cir.1971); *United States v. Eisenmann,* 396 F.2d 565 (2 Cir.1968).

■ Fern next questions the materiality of the statements made by him to Wilson. He argues that the court was misled by the Government in describing the audit procedure because no claim was made in the manner required by the Internal Revenue Service regulations [6], and consequently the statement made by Fern, that his client Brumer had made a charitable contribution, was not material since there was nothing to investigate. Materiality is a question of law, *United States v. Krause,* 507 F.2d 113 (5 Cir.1975); thus we are concerned only with the correctness of the district court's ruling and not the reasons underlying it.

We start with the premise that "[a] material false statement under this rule is one that is *capable* of affecting or influencing the exercise of a government function. . . The statement must have been made with an intent to deceive, a design to induce belief in the falsity or to mislead, but § 1001 does not require an intent to defraud—that is, the intent to deprive someone of something by means of deceit." *United States v. Lichenstein, supra,* at 1277–1278.

■ Fern's contention that his statements could not have been material because all claims for refunds must be in writing misses the point. Statements such as that given by Fern to Wilson falsely stating that his taxpayer had found a deduction that he had not claimed, i.e., a charitable contribution of $25,000, and that he would like to submit it, led Wilson to add it to her worksheet as an item opened by the Service. She was prepared to execute a report including the charitable deduction, which

---

**6.** Fern cites 26 C.F.R. § 301.6402–2 (1982) which sets forth the procedure for filing claims for refunds and which requires, among other things, that the claim must set forth in detail the ground upon which the credit is claimed, contain supporting evidence, and be verified by a written declaration that it is made under the penalties of perjury.

would have resulted in an offer of an agreement regarding Brumer's tax liability[7] until her supervisor required her to obtain further verification. Clearly this was a material false statement which perverted the agency's function, and the fact that it did not actually influence the Government is immaterial. *United States v. Johnson,* 530 F.2d 52 (5 Cir.1976); *United States v. McGough,* 510 F.2d 598 (5 Cir.1975). *United States v. Beer, supra,* is not to the contrary as argued by Fern. There the false statement made to the Federal Deposit Insurance Corporation could not have influenced that agency when the loan had already been repaid before the agency learned about the statement. Nor are we persuaded by Fern's assertion that, assuming for the sake of argument, his statement of a claim was false and material, he subsequently orally recanted it and under *United States v. Cowden,* 677 F.2d 417 (8 Cir.1982) there can be no criminal liability. In *Cowden* the defendant made a false declaration on a customs form, but amended his claim *before* the official indicated that he had found undeclared currency. The court held that even if the official had found the currency in the defendant's luggage before he orally amended his declaration it would be "manifestly unfair that a customs officer should make every effort to conceal his discovery of an item and then, once a passenger has requested to amend his declaration [pursuant to 18 C.F.R. § 148.16], to forbid amendment." *Id.* at 421. Obviously this case is inapposite to the case *sub judice* where Fern apparently changed his story only after the Internal Revenue Service became suspicious.

■ Fern next asserts error in the court's holding that there was sufficient proof of a violation of § 1001 to submit the case to the jury. Relying on *United States v. Poutre,* 646 F.2d 685 (1 Cir.1980); *United States v. Clifford,* 426 F.Supp. 696 (E.D.N.Y.1976), and *United States v. Ehrlichman,* 379 F.Supp. 291 (D.D.C.1974), Fern argues

that since Wilson's testimony as to what Fern said to her was ambiguous and uncorroborated, and since the statements of Fern were susceptible to an interpretation that was literally true, the evidence was insufficient to take the case to the jury. Evaluating these contentions in the light of the evidence most favorable to the Government, *Glasser v. United States, supra; United States v. Herberman,* 583 F.2d 222 (5 Cir. 1978), we disagree.

Fern would have us take twelve sentences of Wilson's testimony and construct a reading of them to mean that rather than making an actual claim to the Internal Revenue Service, Fern was only speculating out loud as to what he might do, and in effect told Wilson that he could claim a deduction if he wished. We are unwilling to isolate a statement from context and give it a meaning entirely different from that which it has when the entire evidence is considered. We need not iterate the evidence we have previously related. Suffice it to say that it established that the audit was open for both the Service and Brumer; that Wilson examined a copy of the check to the church and asked Fern for the rough return for 1975. She told Fern that she thought the deduction was acceptable and she added it to her worksheet as an item approved by the Service.

■ Moreover, while no corroboration is necessary to sustain a conviction for making a false statement under § 1001, *Gevinson v. United States,* 358 F.2d 761 (5 Cir. 1966); *Stein v. United States,* 363 F.2d 587 (5 Cir.), *cert. denied* 385 U.S. 934, 87 S.Ct. 294, 17 L.Ed.2d 214 (1966), Wilson's testimony was corroborated. The Service requested verification of the alleged donation to the church and Fern answered this request. Fern told Agent Eddins that Brumer was entitled to the $25,000 contribution deduction. Fern questioned Agent Mastin whether the Service was trying to make a case out of the contribution. All of this testimony would have made no sense with-

---

7. If a taxpayer agrees to a written proposed assessment prepared by a tax auditor, 26 C.F.R. § 601.105(b)(4) (1982), it operates as a formal claim for a refund. *Bauer v. United States,* 594 F.2d 44, 46 (5 Cir.1974).

out the occurrence of the conversation between Wilson and Fern as related by Wilson. *Poutre* is clearly distinguishable. The Court there held that a verbatim transcript or written statement is not required per se in a prosecution under § 1001, but when a transcript of some answers was taken and two or three of the allegedly false answers are not included in the transcript, and only one prosecution witness testified as to one of the statements, the evidence was "too fragile" to support a conviction. 646 F.2d at 688. In contrast, Fern's statements were unambiguous and corroborated by witnesses and documents.

In *Ehrlichman* the Court applied the "literal truth test" enunciated in *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1972), to allegedly false representations under § 1001 and found that the defendant was too disadvantaged in attempting to argue that his statements to the F.B.I. were literally true on the sole basis of the agents' sketchy notes. The Court concluded, therefore, that § 1001 was improperly invoked.[8] But we discern no parallelism between *Ehrlichman* and the case at bar. Quite properly the Court found insufficient proof of the underlying statements in *Ehrlichman,* as opposed to our findings here.

In *Clifford,* the Court referring to *Bronston,* found that in the absence of a transcript of what was said Clifford was in the same untenable position as was Ehrlichman in trying to argue that his statements were literally true because "... there was no basis, other than pure speculation upon which a reasonable juror could determine what question was asked and what response was given." 426 F.Supp. at 703. It seems clear that in each of these cases the truthfulness of the statement was left in doubt because there was a deficiency in the proof of the underlying facts, while here the falsity of the statement depends on the unam-

biguous testimony that Fern referred to the check as a contribution.

In *Bronston* the Court held that non-responsive, misleading answers, which were nevertheless literally true, could not support a perjury conviction. 409 U.S. at 362, 93 S.Ct. at 601. There the defendant's statements were not contested as being untruthful. Not so here. Fern did not base his defense on the basis that his statements to Wilson were literally truthful, nor did he raise this issue at trial. On the contrary, he flatly denied that he made the statements as related by Wilson and presented his own version. Thus the jury was presented with a clear choice of who was telling the truth, and it obviously disbelieved Fern.

Finally, Fern contends that since Wilson never identified Fern as the person who made the false statements, Fern's motion for a judgment of acquittal should have been granted. This argument gives us little pause. Courtroom identification is not necessary when the evidence is sufficient to permit the inference that the defendant on trial is the person who made the statements in question. *Delegal v. United States,* 329 F.2d 494 (5 Cir.), *cert. denied* 379 U.S. 821, 85 S.Ct. 44, 13 L.Ed.2d 32 (1964). The inference here was overwhelming. Agent Mastin identified Fern as the person who told him he had met with Wilson, and Brumer identified Fern as having represented him at the audit. Fern could not have denied making the statements to Wilson in his various conversations with the Internal Revenue Service agents unless he had been at the meeting in question.

AFFIRMED.

---

8. The Court also premised its holding in *Ehrlichman* on the exculpatory "no" answer doctrine which applies a limiting principle to § 1001 to prevent its broad language from being used to prosecute a person who answers an exculpatory "no" when he is asked by the F.B.I. if he had committed a crime, since Congress did not intend to add a felony conviction to compel potential defendants to confess guilt to governmental investigators. This doctrine is inapplicable to this case.