[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10248
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20344-RNS-2


UNITED STATES OF AMERICA,

                                                              Plaintiff-Appellee,

versus

MADELINE RODGERS,

                                                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 11, 2015)

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Madeline Rodgers appeals her sentence of 72 months of imprisonment and her convictions for one count of conspiring to commit bank and wire fraud, 18 U.S.C. §§ 2, 1349, and two counts of wire fraud that affected a financial institution, *id.* § 1343. Rodgers challenges the sufficiency of the evidence, the denial of a requested jury instruction, and the substantive reasonableness of her sentence. We affirm.

Viewed in the light most favorable to the government and the jury's verdict, the evidence proved that Rodgers conspired with other persons, including Joel Zaldivar, Joaquin Medina, and Carlos Fonte, to defraud financial institutions by submitting false loan applications signed by Betsy Garcia, Michael Gaughan, and Michelle Gaughan. *See id.* § 1349; *United States v. Martin*, 803 F.3d 581, 588–89 (11th Cir. 2015). Garcia, Michael, and Michelle testified that they obtained loans and participated in sham residential sales at Rodgers's request; the loan applications they signed later were altered to overstate their incomes and assets and to include false employment information; Zaldivar, who did not speak to any of the applicants, misrepresented on the applications that he completed the forms using information conveyed to him during telephone interviews; and their applications contained letters prepared by Zaldivar falsely stating that Garcia and Michelle were employed by Medina and that Michael was employed by Lourdes Rodriguez.

2

A federal agent who examined real estate records, loan documents, and bank accounts prepared a chart that he used to explain how Rodgers and her cohorts profited from the three loan transactions. *See Martin*, 803 F.3d at 589. With respect to the first loan, which CitiMortgage, Inc., issued for Garcia to purchase Michelle's residence, the agent testified that Michelle used the $64,002.59 she received at closing to provide Rodgers a cashier's check for $63,792.59. As to the second loan, in which Citibank, N.A., disbursed $423,020.28 to Michael to purchase Fonte's residence, the agent explained that Fonte supplied funds for a down payment by giving $45,000 to Rodgers, who gave $43,000 to Michael, who made a down payment of $41,325.25, and that Fonte received $88,074.62 and $52,451.43 at closing, which he shared with Rodgers by giving her a check for $5,000 and a cashier's check for $25,000. With respect to the third loan, Citibank disbursed $483,616.94 to Michelle to purchase property from Fabiola Llanes, who received $475,210.28 at closing and sent a cashier's check for $106,000 to Fonte, who wrote three checks to Rodgers for $8,000, $8,500, and $7,575

Bank records proved that Rodgers also paid her cohorts. Rodgers wrote a check for $1,300 to Medina before the fraudulent loan applications were submitted to the lenders. Rodgers added Garcia and Michael as signatories to her bank account and allowed Garcia to withdraw $9,200 from the account. And Rodgers gave Michelle a "gift" of $5,000.

3

Ample evidence proves that Rodgers and her coconspirators affected financial institutions by causing them to transfer loan proceeds using interstate wire transmissions.  *See* 18 U.S.C. § 1343. CitiMortgage and Citibank disbursed more than $900,000 through wire transmissions based on the false loan applications submitted by the conspirators. Those disbursements "affected" Citibank, a federally insured financial institution, and its related lending company, CitiMortgage, because they "granted mortgages . . . based on falsified representations of [Michael's and Michelle's] ability to repay, . . . [which] increased [the] risk of loss [to the institutions] through default." *See Martin*, 803 F.3d at 590.

Rodgers argues that she was entitled to an acquittal because none of the government witnesses identified her as the "Madeline Rodgers" involved in the conspiracy, but this argument fails. We have held repeatedly that a defendant does not have to be "pointed out" during trial to prove that she committed the offenses charged. *United States v. Fern*, 696 F.2d 1269, 1276 (11th Cir. 1983); *United States v. Darrell*, 629 F.2d 1089, 1091 (5th Cir. 1980); *United States v. Vahalik*, 606 F.2d 99, 100 (5th Cir. 1979). The identity of a defendant can be established by circumstantial evidence. *United States v. Cooper*, 733 F.2d 91, 92 (11th Cir. 1984).

The jury had before it at least two kinds of evidence connecting Rodgers to the conspiracy. First, the jury reasonably could have relied on Rodgers's driver's

4

license, which the United States introduced into evidence, to identify Rodgers based on her photograph and to compare her signature with that of her namesake on the documents and checks generated by the conspiracy. Second, the jury reasonably could have inferred that Garcia, who was married to Rodgers's brother, was referring to her sister-in-law when testifying about her relationship to and transactions with "Madeline Rodgers."

Rodgers contends that we should vacate her convictions for a lack of identification as we did in *Darrell*, but in that case the government failed to provide any evidence to connect the defendant to a signature on a letter and bad checks used to prosecute him for mail fraud. 629 F.2d at 1090–91. Unlike in *Darrell*, "the evidence is sufficient to permit the inference that [Rodgers] was the person who committed the crime[s]" of conspiracy and wire fraud. *Id.* at 1091.

The district court did not abuse its discretion when it denied Rodgers's request for a jury instruction about witnesses who testify in exchange for immunity or to gain favor with the government. "A defendant has the right to have the jury instructed on a theory of defense only if the proposed instruction presents a valid defense and if there has been some evidence adduced at trial relevant to that defense." *United States v. Duperval*, 777 F.3d 1324, 1334 (11th Cir. 2015) (internal quotation marks, citation, and brackets omitted). Rodgers requested that the district court instruct the jurors to "consider some witnesses' testimony with

5

more caution," like "witnesses who have been promised immunity from prosecution, or witnesses who hope to gain more favorable treatment in their own cases . . . in order to strike a good bargain with the Government," but Rodgers failed to introduce any evidence that the government witnesses testified in exchange for actual or potential benefits. *See United States v. McQueen*, 727 F.3d 1144, 1154 (11th Cir. 2013). And the district court gave a jury charge related to Rodgers's theory that Garcia and the Gaughans falsely denied collaborating with the conspiracy to avoid prosecution. *See Duperval*, 777 F.3d at 1334. The district court instructed the jury to "decide whether you believe what each witness had to say" and whether to "believe or disbelieve any witness in whole or in part" by considering if "the witness [had] any particular reason not to tell the truth" or had "a personal interest in the outcome of the case." This instruction apprised the jury that they could discount testimony they found incredible.

The district court also did not abuse its discretion when it sentenced Rodgers to 72 months of imprisonment. The district court reasonably determined that a sentence within Rodgers's advisory guideline range of 63 to 78 months of imprisonment best satisfied the statutory purposes of sentencing. *See* 18 U.S.C. § 3553(a). And the decision to impose a sentence well below Rodgers's maximum statutory sentence of 30 years suggests that her sentence is reasonable. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). Rodgers alleges a

disparity between her sentence and lesser sentences imposed on Fonte and Zaldivar, but Rodgers was not similarly situated to those coconspirators. *See United States v. Docampo*, 573 F.3d 1091, 1101–02 (11th Cir. 2010). Fonte and Zaldivar pleaded guilty and received lesser sentences for their acceptance of responsibility. Rodgers's sentence is reasonable.

We **AFFIRM** Rodgers's convictions and sentence.