**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JOSE WILFRED HERNANDEZ-
GONZALES,

        Defendant - Appellant.

No. 98-4035

(D. Utah)

(D.C. No. 97-CR-042-02-C)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Jose Wilfredo Hernandez-Gonzales appeals his conviction by a jury for possession and transfer of methamphetamine with intent to distribute and aiding and abetting such possession and transfer, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. We affirm.

**BACKGROUND**

On January 29, 1997, Mr. Hernandez-Gonzales was a passenger in his own car, which was driven by Jesus Alberto Tobar, a/k/a David Monterrossa. A third man, Cristo Ernesto Rivas, was also a passenger in the car. As they drove north on Interstate 15 near Nephi, Utah, en route from Los Angeles, Utah Highway Patrol Sergeant Paul Mangelson stopped the car because the windows were tinted darker than permitted under Utah law.

When Sgt. Mangelson asked Mr. Tobar for his license and registration, Mr. Tobar produced neither and stated that the car belonged to a "friend." He did not inform Sgt. Mangelson that the car belonged to Mr. Hernandez-Gonzales, who was sitting in the rear seat of the car. Sgt. Mangelson testified that he smelled burnt marijuana and air freshener in the vehicle, and he observed a can of air freshener on the car floor next to Mr. Hernandez-Gonzales's foot, as well as another air freshener canister, and a pager. The trooper then asked all three men

to exit the vehicle, and he frisked each one. He found a small plastic baggie containing a substance he suspected to be marijuana in Mr. Rivas' pants pocket.

Sgt. Mangelson testified that he asked Mr. Tobar for permission to search the car, and Mr. Tobar consented. His search of the car revealed additional marijuana and drug paraphernalia. In the trunk of the car the officer found, inter alia, a can of Fix-a-Flat and two screwdrivers. There were virtually no other personal belongings or luggage in the car. The officer found registration materials in the glove compartment indicating that the car belonged to Mr. Hernandez-Gonzales and his sister. The officer further noted that the three to four-year-old car had over 102,000 miles on it. When searching the engine area of the car, Sgt. Mangelson found four separately wrapped packages containing more than 700 grams of methamphetamine taped inside the car's air filter. The wrapping included layers of cayenne pepper and mustard. The three men were then arrested.

Following their arrest, Sgt. Mangelson found a wallet lying on the ground near where the three men had stood while the search took place. In it was a phone number with a Utah area code, which police personnel eventually identified as belonging to a Scott Hamilton. Mr. Tobar said the wallet was his.

While the three men were being detained in the Juab County Jail, they all initially denied any knowledge of the drugs. Mr. Tobar then asked Sgt.

-3-

Mangelson and special agent Bruce Provost of the Utah Bureau of Investigation if it would be better for the other two if he alone took responsibility for the drugs. He then told the officers that he alone knew that the drugs were in the car, and that Mr. Hernandez-Gonzales and Mr. Rivas knew nothing about them. The next day, Mr. Hernandez-Gonzales asked the same hypothetical question–would the others go free if one of them took full responsibility for the methamphetamine. Mr. Hernandez-Gonzales had $317 in his possession when he was arrested, Mr. Tobar had $28 and Mr. Rivas had $2.00.

Mr. Tobar and Mr. Hernandez-Gonzales were each indicted on one count of possession of a controlled substance with intent to distribute and aiding and abetting. They filed motions to suppress, which were denied. Mr. Tobar ultimately pled guilty and was sentenced to 120 months. Mr. Hernandez-Gonzales has consistently maintained he knew nothing about the methamphetamine. He pled not guilty and proceeded to trial. The jury found him guilty, and he was sentenced to a term of 168 months. This appeal followed.

Mr. Hernandez-Gonzales argues: 1) the trial court gave the jury an "anti-deadlock" instruction which improperly coerced the jury into finding him guilty; 2) the evidence was insufficient to support his conviction; 3) the trial court erred in refusing to grant him a continuance so he could attempt to secure Mr. Tobar's

testimony; 4) the trial court erroneously denied his motion to suppress; and 5) his trial counsel was ineffective.

**DISCUSSION**

**I.      Anti-Deadlock Instruction**

Trial to the jury lasted two days.  The jury then commenced deliberations, and it deliberated for 22 hours, including until 11:30 p.m. on Thursday, December 11.  When it returned at 10:00 a.m. on Friday, December 12, to resume its deliberations, the court gave the jury the following "anti-deadlock" instruction:

> I thought that this instruction maybe can help you.  You've now been out altogether about 21 or 22 hours, so I'd ask you to listen to me very carefully if you would.  This is an important case.  The trial has been expensive in time, effort and money to both the defense and the prosecution.  If you should fail to agree upon a verdict, the case is left open and must be tried again.  Obviously, another trial would only serve to increase the costs to both sides, and there's no reason to believe that the case can be tried again by either side better or more exhaustively that it's been tried before you.
>
> It's your duty as jurors to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after impartial consideration of the evidence with your fellow jurors.
>
> Remember, you are not advocates; you are not partisans; you are judges of the facts.
>
> In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you're convinced it's erroneous, but do not surrender your honest opinion–your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

I'm going to ask you to retire once again, continue your deliberations with these additional comments in mind, to be applied of course in conjunction with all of the instructions I have previously given you.

R. Vol. IV, at 472-73. Mr. Hernandez-Gonzales's counsel objected to the instruction as given, arguing that it should have included the statement that "should you still remain unable to reach a unanimous conclusion, then that will be your conclusion." Id. at 470. The judge refused to modify it.

The jury resumed its deliberations. At 11:30 a.m., juror number 12, Ms. Emeline Lines, complained about some health problems she had been experiencing and voiced doubts about her ability to continue to serve.[1] The judge urged her to return to the jury room. At 12:30 p.m., the jury returned a guilty verdict.

We urge caution in the use of Allen instructions like the one given in this case.[2] United States v. Rodriguez-Mejia, 20 F.3d 1090, 1091 (10th Cir. 1994). "We review whether an Allen instruction was erroneously given on a case-by-case basis with a view towards determining whether the instruction had a coercive effect on the jury." Id. Factors relevant to determining whether the instruction was coercive include "(1) [t]he language of the instruction; (2) its incorporation

---

[1]Ms. Lines had apparently made similar complaints the day before.

[2]The so-called Allen instruction derives its name from jury instructions approved in Allen v. United States, 164 U.S. 492 (1896).

with other instructions; and (3) the timing of the instruction, for example, whether given before the jury has commenced deliberations and whether given before the jury has reached an impasse or deadlock." United States v. Porter, 881 F.2d 878, 888 (10th Cir. 1989) (footnotes omitted).

Mr. Hernandez-Gonzales argues that the wording and the timing of the Allen instruction impermissibly coerced the jury into returning a guilty verdict. We disagree. We have previously approved virtually identical language. See Rodriguez-Mejia, 20 F.3d at 1091-92; United States v. Butler, 904 F.2d 1482, 1487-88 (10th Cir. 1990). Furthermore, as in Rodriguez-Mejia, the instruction was directed at the entire jury, not just the minority, thereby reducing further the possibility of coercion. See Rodriguez-Mejia, 20 F.3d at 1092; see also United States v. Meuli, 8 F.3d 1481, 1487 (10th Cir. 1995). The instruction also emphasized, as in Rodriguez-Mejia, that the jurors should not surrender their honest convictions. We therefore perceive no error in the language of the instruction.

We further hold that there was no error in the timing of the instruction. "We have held on many occasions that, while not preferred, it is not error to give an Allen instruction after deliberations have begun but before the jury declares deadlock." Rodriguez-Mejia, 20 F.3d at 1092; see also United States v. Smith, 857 F.2d 682, 684 (10th Cir. 1988). We decline to speculate that the jury

necessarily felt coerced simply because they reached a verdict two hours after the Allen anti-deadlock instruction was given.

## II.     Sufficiency of the Evidence

Mr. Hernandez-Gonzales argues there was insufficient evidence to support his conviction for possession and transfer or aiding and abetting the possession and transfer of the methamphetamine. "We review claims of insufficiency of the evidence by 'review[ing] the record de novo and ask[ing] only whether, taking the evidence–both direct and circumstantial, together with reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" United States v. Flores, 149 F.3d 1272, 1276-77 (10th Cir. 1998) (quoting United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996)), cert. denied, 1999 WL 8590 (Jan. 11, 1999) (No. 98-7192).

Mr. Hernandez-Gonzales was charged with knowing and intentional possession of methamphetamine with intent to distribute and with aiding and abetting Mr. Tobar's knowing and intentional possession of methamphetamine with intent to distribute. The government accordingly had to prove "beyond a reasonable doubt the following elements: '(1) the defendant knowingly possessed the illegal drug; and (2) the defendant possessed the drug with the specific intent

to distribute it.'"    United States v. Reece  , 86 F.3d 994, 996 (10th Cir. 1996)

(citations omitted).  To prove the aiding and abetting charge, the government had

to show that Mr. Hernandez-Gonzales

> willfully associate[d] himself with the criminal venture and [sought]
> to make it succeed through some action on his part.  The government
> must prove more than mere presence at the scene of the crime even if
> coupled with knowledge that the crime is being committed.
> However, participation may be established by circumstantial
> evidence, and the evidence may be of relatively slight moment.

United States v. McDonald   , 150 F.3d 1301, 1305 (10th Cir. 1998) (quoting     United

States v. Esparsen  , 930 F.2d 1461, 1470 (10th Cir. 1991)).

The sheer volume of the methamphetamine in the car is strong evidence of

the intent to distribute element.     See United States v. Gay  , 774 F.2d 368, 372

(10th Cir. 1985) ("The quantity of the drug possessed is a circumstance which

may permit the inference that the possessor intended to sell, deliver, or otherwise

distribute.").  The main issue is whether, in light of Mr. Tobar's claim that he

alone knew of the drugs and Mr. Hernandez-Gonzales's claim that he did not

know of them, the evidence supports the conviction for knowing possession of the

methamphetamine.

"Possession may be actual or constructive."      United States v. Carter   , 130

F.3d 1432, 1441 (10th Cir. 1997),    cert. denied , 118 S. Ct. 1856 (1998).  In this

case, the question is whether Mr. Hernandez-Gonzales had constructive

possession of the methamphetamine in his car.  "Generally, a person has

constructive possession when he or she knowingly holds ownership, dominion or control over the object and premises where it is found." United States v. Valadez-Gallegos, No. 98-2017, 1998 WL 879735, at *7 (10th Cir. Dec. 17, 1998). "To prove constructive possession when there is joint occupancy of a vehicle, the government must present direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband." Id.

The evidence presented to the jury in this case established the following: Mr. Hernandez-Gonzales was the registered owner of the vehicle; when it was stopped, the driver told Sgt. Mangelson, in Mr. Hernandez-Gonzales's presence, that the car belonged to a "friend," and neither Mr. Tobar nor Mr. Hernandez-Gonzales ever informed the officer that Mr. Hernandez-Gonzales was the registered owner; Mr. Hernandez-Gonzales was traveling along a known drug corridor (Interstate 15) from a known drug source city (Los Angeles); Mr. Hernandez-Gonzales had no luggage and virtually no supplies, although he was making a fairly long trip; the car contained two air fresheners, which drug traffickers commonly use to mask the odor of drugs, as well as a pager; the occupants of the car told the officer they were going to visit an uncle, whose name and address they were all unable to provide; while Mr. Hernandez-Gonzales had told his wife he was going to Utah to purchase a car, he never informed the

police officer of this intention; [3] Mr. Hernandez-Gonzales had $317 when arrested, presumably an insufficient amount with which to buy a car; and the three to four-year-old car had exceptionally high mileage.

Given that we must view this evidence in the light most favorable to the government, and considering what reasonable inferences may be drawn from the evidence, we hold that a reasonable jury could have convicted Mr. Hernandez-Gonzales of possession with intent to distribute beyond a reasonable doubt. Additionally, the same evidence could reasonably support the aiding and abetting conviction.

## III. Continuance

On the first day of trial, Mr. Hernandez-Gonzales's counsel informed the court that, although he had not previously tried to secure the attendance of Mr. Tobar at trial, Mr. Hernandez-Gonzales had now changed his mind and wanted Mr. Tobar to testify in person about his statement to police personnel taking full

---

[3]Mr. Hernandez-Gonzales's wife testified that she and Mr. Hernandez-Gonzales were experiencing financial difficulties and that Mr. Tobar had, by himself, taken the car for approximately two hours prior to the departure to Ogden. Defense counsel emphasized this testimony to the jury, arguing it gave Mr. Tobar ample opportunity to himself place the methamphetamine in the car, without Mr. Hernandez-Gonzales's knowledge. Mr. Hernandez-Gonzales's wife never informed anyone of that event until she was called to testify at trial.

and sole responsibility for the methamphetamine. [4] Mr. Tobar was incarcerated in California on murder and attempted murder charges. The court signed a writ of habeas corpus ad testificandum. When the U.S. Marshal's office told the court that it would take days, perhaps a week, to bring Mr. Tobar to Utah from California, Mr. Hernandez-Gonzales's counsel then said, "If it's possible to bring Tobar in from California next week, I understood earlier from Your Honor's clerk that there may have been a day next week that Your Honor might have had a half-a-day available." R. Vol. II, at 79. In response, the court stated that "I can't do that to the jury. We're going to have–the case is going to go." Id.

On the second day of trial, the marshal's office reported that it would be unable to secure Mr. Tobar's presence at trial. The court therefore held that Mr. Tobar was unavailable, and the Mr. Tobar's hearsay statement would be admissible under Federal Rule of Evidence 804. Mr. Hernandez-Gonzales did not object to that ruling.

---

[4]Apparently, defense counsel had known for several weeks that the government would object to any attempt to introduce Mr. Tobar's statement as hearsay. But defense counsel made no effort to obtain Mr. Tobar's presence so he could testify in person because Mr. Hernandez-Gonzales did not want Mr. Tobar to testify and defense counsel was worried about impeachment of Mr. Tobar and possible negative effects from his testimony. On the first day of trial, however, Mr. Hernandez-Gonzales changed his mind and decided he wanted Mr. Tobar to testify.

He argues on appeal that the court erred in failing to grant what he views as his request for a continuance. We agree with the government that Mr. Hernandez-Gonzales did not clearly request a continuance, and we perceive no error in the court's failure to sua sponte grant a continuance. See United States v. Harvey, 959 F.2d 1371, 1377 (7th Cir. 1992) (holding that defendant had waived his claim that the court erred in failing to grant a continuance "because he never asked the district court for a continuance"). Moreover, Mr. Tobar's statement was admitted, so the jury heard his claim that he alone was responsible for the methamphetamine.

Mr. Hernandez-Gonzales also argues that the court erred in admitting his own statement to Trooper Provost asking whether the others would go free if one of the three men arrested took full responsibility for the drugs. The court ruled that the statement was not a confession, but rather a voluntary statement, and admitted it. Mr. Hernandez-Gonzales's expressed objection to the admission of the statement was that the government did not disclose that the statement had been made, and that it intended to use it at trial, until December 5, a few days before the trial. We agree with the district court that it was a voluntary statement, not a confession, and was admissible. Moreover, we hold that it was not prejudicial to Mr. Hernandez-Gonzales, inasmuch as, unlike Mr. Tobar's similar question which was immediately followed by his acceptance of full and sole

responsibility for the drugs, Mr. Hernandez-Gonzales's statement is as easily construed as simply a question about the effect of Mr. Tobar's confession. [5] The court did not abuse its discretion in admitting evidence of the statement.

## IV. Motion to Suppress

Mr. Hernandez-Gonzales argues that the district court erred in adopting the report of the magistrate judge recommending the district court hold that the search of Mr. Hernandez-Gonzales's vehicle was lawful and recommending that the district court deny his motion to suppress the methamphetamine. We agree with the government that Mr. Hernandez-Gonzales has waived this claim because he failed to object to the magistrate judge's report and recommendation. See United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (noting our "'firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions'") (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Moreover, Mr. Hernandez-Gonzales does not cite to the record in support of his otherwise conclusory assertion that the search of his car was invalid.

_____

[5]The government's theory about Mr. Hernandez-Gonzales's hypothetical question, which Agent Provost articulated to the jury, was that the three men agreed among themselves that Mr. Tobar would take responsibility for the drugs.

## V.      Ineffective Assistance of Counsel

Finally, Mr. Hernandez-Gonzales argues that his counsel, who also represents him on appeal, was ineffective at trial. We have held that "'[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed.'" United States v. Gell-Iren, 146 F.3d 827, 831 (10th Cir. 1998) (quoting United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc)). The reason for that practice is to permit the development of a factual record and to permit the district court to examine the merits of the issue in the first instance. See id. There has been no finding by the district court on Mr. Hernandez-Gonzales's trial counsel's effectiveness. We therefore decline to consider this issue on direct appeal, and dismiss this claim without prejudice.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

-15-